FRANCES YARDE, Administratrix, Respondent, v. WALKER D. HINES, Director General Of Railroads, Appellant.

In The Kansas City Court of Appeals. January 30, 1922.

1. EVIDENCE: Judicial Notice: Court Judicially Knows Telegraph is Necessary to Operation of Railroad. The court judicially knows that the telegraph is necessary for the operation of a railroad and usually consists of wires strung on holes along the side of the tracks.

2. ————: Judicial Notice is Taken by Court of the Assumption by Government of the Management and Operation of Railroads of Country. The court judicially notices the assumption by the government of the management and operation of all the railroads of the country.

3. MASTER AND SERVANT: Evidence Held to Show Employment of Deceased by Director General. Evidence of employee of Director General of Railroads that deceased worked in same gang with witness in accordance with the foreman's directions, on telegraph poles along right of way, at time railroads were being operated by Director General, held, sufficient to make a prima-facie case that deceased was employed by the Director General.

4. INTERSTATE COMMERCE: Employee on Telegraph Line Used in Interstate Commerce by Railroad, Held Engaged as Such in Interstate Commerce. Evidence that deceased was employed by defendant to repair a telegraph line and poles that were being used by defendant in the operation of a railroad engaged in interstate commerce, held deceased was an employee in such commerce within employer's Liability Act, (U. S. Comp. St., secs. 8657-8665).

5. MASTER AND SERVANT: Employee Killed Going to Breakfast Held to be on Mission for Employer and Engaged Within Scope of Employment at Time. Where an employee of interstate railroad was engaged by month, receiving as compensation for his services certain wages and his board and lodging in addition, and at the time of his death under the direction of his foreman was proceeding to the place where his employer had provided breakfast for him, after which, he would work upon the railroad, held, to be on a mission of his employer and within the scope of his duties as an employee at the time he was killed.

Yarde v. Hines.

6. **DAMAGES: Death: Rule Stated as to Measure of Recovery under Federal Employes' Liability Act.** Under the Federal Employers' Liability Act, (U. S. Comp. St., secs. 8657-8665), an instruction that plaintiff was entitled to recover the loss the deceased would, with reasonable certainty, have contributed to her had he lived was erroneous, as it was not a sum of money equal to what deceased would have given plaintiff had he lived, but the present value thereof that plaintiff was entitled to recover.

7. **APPEAL AND ERROR: Instructions: Measure of Damages: Where Instruction Includes Damages not Recoverable Defendant not Required to Request Instruction with Reference Thereto.** The rule that an instruction on measure of damages is correct where a statement general in its scope as to what plaintiff is entitled to recover is made and if defendant desires to direct jury more particularly to the elements they should consider in estimating the damage, it is duty of defendant to ask such an instruction, will not prevent a reversal where the instruction specified what elements jury should consider, which were not proper elements upon which to base their verdict, the matter submitted constituting a positive mis-direction.

8. **EXECUTORS AND ADMINISTRATORS: Jurisdiction: Suits for Damages for Wrongful Death not Required to be Brought in County of Appointment of Administratrix.** Section 5, Revised Statutes 1919, relates to the administration of estates in the probate court, and has nothing to do with suits for damages for wrongful death which are properly brought under section 1180, Revised Statutes 1919, and not required to be brought in the county where the administratrix was appointed.

9. **INSTRUCTIONS: Assuming Facts: Instruction Requiring Jury to Find Facts not Erroneous as Assuming Issuable Facts.** An instruction which first required jury to "find and believe," various matters therein set forth is not erroneous as assuming issuable facts.

10. **————: Instructions Should not Refer to Matters not Supported by the Evidence.** Matters not supported by evidence should be eliminated from instructions.

11. **————: Appeal and Error: Appellant's Statement of Questions Involved in Case Held to be Sufficient Compliance with Rules.** Although defendants' statement on appeal did not show that only one witness testified for plaintiff on issue of negligence, but contained the testimony of that witness on damages complies in spirit with rule 16, (169 S. W. XIV), requiring statement without repetition of testimony of witnesses, as the same gives a fair view of the questions involved in the case.

Appeal from the Circuit Court of Jackson County.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED AND REMANDED.

*E. O. Jones* and *John T. Barker* for respondent.

*J. W. Jamison, J. S. Bassett* and *Cooper, Neel & Wright* for appellant.

Bland, J.—This is an action brought under the Federal Employers' Liability Act for the wrongful death of Ray C. Yarde. There was a verdict and judgment in the sum of $4,000 and defendant has appealed.

Defendant makes the point that it demurrer to the evidence should have been sustained. The facts show that deceased was killed by a collision between a locomotive engine and an automibile handcar, both being operated by the defendant who was at the time in charge and control of the Missouri, Kansas & Texas Railway Company as Director General of Railroads. Deceased left no widow but a daughter, twenty-three years of age, who was appointed and sues as administratrix of his estate. The collision occurred between the towns of Arcadia and Witcher in the State of Oklahoma on the 14th day of November, 1918, about six o'clock in the morning and before daylight. Deceased together with his foreman and other employees was riding on the handcar with a light attached thereto when suddenly, without warning, a locomotive engine, without lights and going in an opposite direction on the same track, struck the handcar, killing the deceased.

The evidence shows that the Missouri, Kansas & Texas railway ran through the States of Missouri, Kansas, Oklahoma and Texas and that the branch of the railroad upon which deceased was killed ran from Kansas City Missouri, through the State of Kansas to Oklahoma City, Okla.; that on the right of way of defendant's railroad were situated poles and telegraph lines that ran through the State through which defendant's railroad was operated. While there is no direct evidence as

to by whom deceased was employed, the clear inference is that he was employed by the defendant. Deceased was engaged in the work of putting in poles and re-enforcing and bracing old poles of the telegraph line on defendant's right of way. He was employed at a wage of $50 per month with board and lodging. The men, including deceased, who were doing the work on the telegraph lines were housed in box cars located at Arcadia. On the morning in question they were going to Witcher to get their breakfast and after having obtained the same they intended to resume their work on the telegraph line. They were at the time working on the telegraph line at a point between Arcadia and Witcher. Their working hours were from eight o'clock in the morning until noon and from one o'clock to five o'clock P. M. It would seem from the admission of counsel for plaintiff that the telegraph line was owned by the Western Union Telegraph Company.

In connection with the point that his demurrer to the evidence should have been sustained, defendant insists that there is no evidence that deceased was working for the Director General of Railroads; that the locomotive engine was being operated by defenadnt or that deceased was engaged in interstate commerce at the time of his death. It is further insisted that there is no evidence that defendant either owned or operated the telegraph line or poles that deceased was working on at the time or that such telegraph line or poles were being used in interstate commerce and that there is no evidence that deceased was working for anyone at the time of his death.

The court judicially knows that the telegraph is necessary for the operation of a railroad and usually consists of wires strung on poles along the side of the railroad tracks. [23 C. J. 75; State v. The Indiana & Southern Ill. Rd. Co., 133 Ind. 69, 75.] In this case the facts show that the telegraph line that deceased was working on was on defendant's right of way; that it extended through the States of Oklahoma and Kansas. The court

judicially knows that at the time that deceased was killed the government had assumed the management and operation of all the railroads of the country. [23 C. J. 119; State v. Public Service Commission, 235 S. W. 131.] The evidence shows that the unlighted engine that ran into the handcar was being operated upon the lines of railroad of the Missouri, Kansas & Texas Railway Company. We, therefore, judicially know that the engine was being operated by the defendant, The Director General of Railroads. It could well be inferred by the jury that no other person would be operating the engine upon this railroad at the time in question except the Director General.

While there is no direct evidence as to whom the deceased was working for, all the testimony in the case except as to the damages sustained by plaintiff was given by one witness on the part of plaintiff, and this witness was a fellow workman of deceased. He testified that he was employed by the Missouri, Kansas & Texas Railway Company; that he reported for work to Mr. Fuel, foreman of the Missouri, Kansas & Texas Railway and received instructions from him as to what to do; that he reported to work at Arcadia; that Fuel was the foreman of the gang; that deceased was a member of the gang and worked in accordance with the foreman's directions; that the bunk cars at Arcadia were owned by the Missouri, Kansas & Texas Ry. Co. This ought to be enough evidence to make a prima-facie case that deceased was employed by the Director General of Railroads in charge of and operating the railroad at the time.

From what we have said it is fair to say that the evidence shows that deceased was working for the defendant and that the engine was by defendant negligently run into the handcar upon which deceased was riding, and that deceased was employed by the defendant to repair a telegraph line and poles that were being used by the defendant in the operation of a railroad that was engaged in interstate commerce. It is said in the case of Coal & Coke Co. v. Deal., 231 Fed. 604, 607:

"Where one is injured while attempting to erect a telegraph pole to be used for the purpose of supporting wires over which messages are to be sent in directing the operation of trains in order that a company engaged in interstate commerce may safely operate its trains, such person is engaged in interstate commerce within the meaning of the Act."

It is insisted that the demurrer to the evidence should have been sustained for the reason that deceased was not working for the defendant at the time of his injury; that the evidence merely shows that he had left Arcadia at six o'clock A. M. for his breakfast and that he had not reached the place where he was to perform the work that he was engaged to do; that his work hours did not begin until eight o'clock in the morning. As we have stated, the evidence shows that deceased was engaged by the month, receiving as compensation for his services $50. per month and his board and lodging; that he lived in defendant's bunk cars at Arcadia. It was necessary for the defendant to give him his breakfast before he went to work on the morning of his death, and under the direction of his foreman he was proceeding to Witcher for the purpose of obtaining this meal. It was therefore necessary for him to go to Witcher for his breakfast and his act was not voluntary within the meaning of the law in reference to such a matter. He was on a mission of his employer and was, therefore, engaged in and within the scope of his duties as an employee of the defendant at the time he was killed. [Williams v. Schaff, 282 Mo. 497; Crecelius v. Chi. M. & St. P. Rd. Co., 223 S. W. 413.]

The evidence shows that deceased contributed to the support of his daughter, Frances Yarde, various sums of money for some years prior to his death. The court gave the following instruction, of which the defendant complains—

"The court instructs the jury that if you find a verdict in favor of the plaintiff, you should assess her dam-

ages at such sum as you find from the evidence to be fair and reasonable compensation for the death of her father, Ray C. Yarde, and in assessing the amount of damages, if any, you should take into consideration the pecuniary loss, if any, suffered by the daughter of Ray C. Yarde, by his death; and the *loss which the plaintiff is, in such a case as this, entitled to recover, is what you may believe from the evidence the deceased would with reasonable certainty have contributed to his daughter, Frances Yarde,* for the necessities of her support and maintenance, taking into consideration his age, health, habits of industry, ability and disposition to labor and the probability of the length of life of Ray C. Yarde, and Frances Yarde, his daughter, and her ability, if any, to support and maintain herself." (Italics ours.)

The instruction is erroneous for the reason that it directs the jury to allow plaintiff a gross sum of money equal to what deceased would reasonably have contributed during his expectancy. It was not a sum of money equal .to what deceased would have given his daughter had he lived but the present value thereof that plaintiff was entitled to recover. There is no question but that the instruction was erroneous for the reason given. The Supreme Court of the United States in the case of Chesapeake, etc., Rd. Co. v. Kelly, 36 Sup. Ct. Rep. 630, declared a charge similar to the one contained in this instruction to be erroneous. It is insisted by plaintiff that defendant should have given an instruction limiting the recovery to the present cash value of what deceased would reasonably have contributed to her support. Of course, the rule is well settled that an instruction on the measure of damages is correct where a statement general in it scope as to what plaintiff is entitled to recover is made, and if defendant desires to direct the jury more particularily to the elements they should consider in estimating the damage, it is the duty of the defendant to ask an instruction to accomplish this end, in the absence of which there is mere non-direction. [Simmons v. Murray, et al., 234 S. W., 1009.]

The instruction in the case at bar did not stop when it told the jury that it should assess plaintiff's damage as such sum as they found from the evidence to be a fair and reasonable compensation for the death of her father but told the jury that plaintiff was entitled to recover the amount of money that her father would reasonably have contributed to her had he lived. The instruction specifies what element the jury should consider and this element was not a proper one upon which to base their verdict, it, therefore, constituted a positive mis-direction and was not merely non-direction.

As the case, no doubt, will be retried, it is proper for us to pass other points raised in appellant's brief which will probably again arise upon a retrial. It is insisted that the circuit court of Jackson County was without jurisdiction over the subject-matter because the suit could be brought only in Macon county where plaintiff was appointed administratrix. In support of this defendant cites section 5, Revised Statutes 1919. This statute relates to the administration of estates in the probate court and has nothing to do with suits of this character. This suit was properly brought under section 1180, revised statutes 1919.

In regard to plaintiff's instruction No. 1; on another trial it would be well if the word "crushed" be eliminated from the instruction as there is no evidence on this point. The instruction does not assume facts in issue. The first requirement of the instruction is that the jury "find and believe" various matters and is not different in principle from the instruction approved in the case of Costello v. Kansas City, 219 S. W., 383, 391, and the one in Warnke v. Rope Co., 186 Mo. App. 30, 45. There was no evidence that there was any caboose attached to the engine and that matter should be eliminated from the instruction.

It is insisted that the petition fails to state a cause of action. The petition is very inartificially drawn and is certainly subject to a demurrer. However, there was no demurrer filed to the petition and it may be that in view

of the liberal rule to be applied to a petition where it is attacked for the first time by objection to the introduction of testimony, the petition may possibly be good at this stage. However, it is unnecessary for us to pass upon this point for the reason that the judgment must be reversed and the cause remanded and, no doubt, plaintiff will amend her petition to meet defendant's objections to it.

Plaintiff has filed a motion to dismiss defendant's appeal on the ground that the statement filed by the defendant does not comply with rule 16 of this court providing that the "statement filed by appellant shall consist of a clear and concise statement of the case without argument, reference to issues of law or repetition of testimony of witnesses." Appellant's statement comes dangerously near trespassing upon this rule. It consists of eighteen pages. It starts out under the heading of "Statement" by mentioning the parties to the suit and that the suit was to recover damages on account of the death of Ray C. Yarde "alleged to have been caused by the negligence of the defendant;" then appears a subhead "Pleadings" where counsel in his own words states the substance of plaintiff's petition and quotes a short paragraph therefrom and states that the answer consisted of a general denial. Then follows another sub-head entitled "Trial" stating in what division of the Circuit Court of Jackson County the case was tried, the result of the trial, that appeal was had; then follows the sub-head entitled "Testimony In Behalf Of Plaintiff." The evidence in reference to the collision and the negligence of the defendant was given by one witness by the name of Ferguson. Under this last subhead defendant states "The Witness Olin B. Ferguson Testifies." Then follows in counsel's own words the testimony of witness Ferguson interpersed with some quotations from his evidence. Under this same head counsel in his own language and by quotations gives the substance of the testimony of Verne Yarde, deceased's brother, and Frances

Yarde, plaintiff. The testimony of these two witnesses all goes to the damages sustained by plaintiff.

If we should insert under this last sub-head before the words "Witness Olin B. Ferguson testifies" the phrase "The evidence shows by the only witness on the question of negligence" the brief would contain a very fair statement from defendant's standpoint of the facts in relation to defendant's negligence. From the whole of appellant's statement, which it not overly long, we get a clear understanding of the case in relation to the points to be relied upon by the defendant . After the matter contained under the head "Statement" the brief contains the heading "Points and Authorities" which consists of various points separately stated, with authorities under each head, then follows a heading "Assignment of Errors" in which defendant has twelve separate errors assigned; than follows the heading "Brief and Argument" under which defendant argues his case in an appropriate manner.

As before stated, the statement comes very near violating our rule and we do not desire to encourage the bar to follow the method contained in the statement in this case. However, in view of the fact that there were very few witnesses on behalf of plaintiff and the fact that brief would contain a good statement in relation to the cause of the accident and the negligence if a few words were changed, and as the statement gives a fair view of what is involved in the case, we believe that it would not be serving the ends of justice to dismiss the cause for lack of a proper statement. We are constrained to hold that the whole statement complies in spirit with our rule 16.

The motion to dismiss the appeal is overruled and the judgment reversed and the cause remanded. All concur.