State of Missouri at the Relation of William T. Nute, Relator, v. Leslie A. Bruce, Circuit Judge.—70 S. W. (2d) 854.

Court en Banc, April 18, 1934.

*Farrar & Phillips* and *T. N. Haynes* for relator.

*Louis A. Laughlin* and *James H. Harkless* for respondent.

TIPTON, J.—This is an original proceeding in mandamus to compel the respondent, the judge of the Circuit Court of Cass County, Missouri, to set aside an order and judgment sustaining the defendants' plea to the jurisdiction of respondent over the persons of the defendants, and dismissing the case wherein this relator is plaintiff and J. Clarence Fry and Robert W. Pringle, the executors of the estate of George H. Nute, deceased, and J. Clarence Fry and Esther M. Fry, his wife, Robert W. Pringle and Georgia Pringle, his wife, Louise Haines, Mina Loersch and Walter Loersch, her husband, Clara A. Nute, the Town of Wolfboro, Carroll County in the State of New Hampshire, the George H. Nettleton Home for Aged Women in Kansas City, Jackson County, Missouri, and the Children's Mercy Hospital located in Kansas City, Jackson County, Missouri, are defendants.

That cause of action was instituted in the Circuit Court of Cass County by the relator as plaintiff and the petition in substance stated that William T. Nute, Sr., was a resident of Jackson County, Missouri, and died on September 13, 1911, and that he left surviving him this relator as his only child and sole heir at law, and Hazel H. Nute, his wife, who was the mother of this relator. At the time of his death, and for many years prior to it, W. H. Nute, Sr., was in partnership with George H. Nute, under the firm name and style of "Nute Brothers" and engaged in the business of livestock brokers, in Kansas City, Missouri; that the partnership business, at the time of the death of William T. Nute, Sr., was very prosperous and paying high profits and returns on the capital investment, and that the good will of the said business was very valuable. The petition also stated that William T. Nute, Sr., and George H. Nute were brothers of the half-blood; that at the time of William T. Nute's death, the relator was a minor having been born on December 21, 1909; that on or about October 11, 1911, while relator's mother, Hazel H. Nute, was acting as natural guardian for the relator, the relator having no legal guardian, for and in his behalf entered into a contract not in writing wherein the said George H. Nute agreed to act as the legal guardian of the estate of the relator during the relator's minority, and that his share and interest in the estate of William T. Nute, Sr., deceased, including the share in the estate, should be collected, retained, cared for, controlled, managed, and used in said business as long as relator remained a minor; that in consideration thereof George

H. Nute agreed to allow interest on the amount of relator's estate, so used by George H. Nute, at the rate of 6 per cent per annum; and that when the relator should arrive at his majority, George H. Nute would turn over all principal remaining in his hands to this relator. It was further agreed that George H. Nute, in consideration of the benefits by him to be derived by the use of relator's property in the business, would pay to the relator the sum of $25,000 at the time he became of age, and that he would make a will leaving the relator the sum of $25,000 so that he would be paid if he became of age after the death of George H. Nute.

In pursuance of that agreement on October 11, 1911, George H. Nute was appointed by the Probate Court of Jackson County, Missouri, guardian of the estate of relator, duly qualified and thereafter acted as such until relator's legal majority, and that under the agreement took and received into his care, control and management the estate of relator and thereafter used the same in his business until relator arrived at his legal majority, at which time George H. Nute paid to the relator the sum of $9308.40, which he claimed to be the amount of the principal then belonging to the relator's estate, but he did not pay the relator the sum of $25,000 nor make any provisions to pay the relator out of his estate. The petition further stated that the relator had fully performed all the conditions of his part of the agreement, but that George H. Nute failed to perform his part of the agreement in that he failed to pay to the relator the sum of $25,000 at the time he became of age nor did he make any provisions to pay the relator this sum out of his estate, and that he did not account for the relator's share of the good will of the partnership business which was alleged to be of the value of $5000. That George H. Nute died September 28, 1931, a resident of Cass County, Missouri, and left his last will and testament, which was filed and probated in the probate court of that county; he left no children or other descendants or widow. That under the provisions of the will the defendants, J. Clarence Fry and Robert W. Pringle, were appointed by the probate court executors of the estate of said George H. Nute, deceased, and qualified as such; that under the provisions of the will all of the defendants named in the circuit court proceedings are named as devisees and legatees of said estate. The petition further alleged that George H. Nute at divers times, after entering into the agreement with relator's mother and while he was using the relator's property, told relator and his mother that he would make a will in accordance with the agreement providing that the relator should receive $25,000 out of his estate. That on May 27, 1927, George H. Nute, while mentally incapacitated to make a deed or transact any business, and while he was under the undue influence and domination of the said J. Clarence Fry and his wife, and Robert W. Pringle and his wife,

executed a deed conveying the farm in Cass County to J. Clarence
Fry and Robert W. Pringle; that this conveyance was without con-
sideration and the farm rightfully belonged to the estate of George
H. Nute. The petition in the circuit court asked for the specific per-
formance of the agreement, and for judgment in the sum of $25,000
with interest from the date the relator became of age and for the fur-
ther sum of $5000 for his share of good will with interest from Oc-
tober 11, 1911, and that the same be declared to be charges and liens
against the Cass County land and all other property belonging to
the estate to the exclusion of any other claims of the legatees and dev-
isees named in the will.

The defendants in the circuit court proceedings in Cass County
filed a plea to the jurisdiction showing that none of the defendants
were served by summons in Cass County, Missouri; and that the
plaintiff was a resident of the State of California and for that reason
the circuit court did not have jurisdiction over the persons of the de-
fendants. The plea to the jurisdiction was sustained by the re-
spondent and the cause dismissed. The relator filed a motion to set
aside the order and judgment sustaining the defendants' plea to
the jurisdiction, which motion was overruled by the respondent.

■ Respondent has waived the issuance of the alternative writ
and demurred to the petition therefor. This puts the cause at issue.
[State ex rel. v. Gordon, 238 Mo. 168, 142 S. W. 315, Ann. Cas. 1913
A, 312.] The allegations of the petition demurred to stand admitted.
[State ex rel. v. Reynolds, 256 Mo. 710, 165 S. W. 801; State ex rel.
v. Hackmann, 283 Mo. 469, 223 S. W. 575.]

In determining whether or not the respondent had jurisdiction to
try the cause pending before him, it is first necessary to decide if
the petition states a cause of action in equity. The petition contains
many irrelevant allegations. The prayer of the petition asks for
''specific performance of said contract and agreement entered into
by plaintiff's mother, as his natural guardian, with the said George
H. Nute as aforesaid, and that plaintiff have judgment in the sum
of $25,000 with interest thereon from date when plaintiff became of
legal majority, December 21, 1930, at six per cent per annum, and
the further sum of $5000 for the share of plaintiff in the good will
of said business with interest thereon at six per cent per annum from
October 11, 1911, and that said sums be declared and decreed to be
charges and liens against said Cass County land and all other prop-
erty belonging to said estate to the exclusion of any claims'' of the
defendants. ■ The relator seeks an ordinary money judgment and
further asks that the judgment be declared a lien upon all property
belonging to the estate and upon the Cass County land that had
previously been conveyed by George H. Nute. If the relator's petition
does not state facts that entitle him to the lien asked for, then he

would only be entitled to an ordinary money judgment, and, therefore, he would have an adequate remedy at law. The petition does not allege that George H. Nute promised to secure the payment of either of these sums asked for in the petition. Nor does the petition allege that the estate is insolvent, but on the other hand specifically states that the relator "does not know and is not informed as to the value and worth of the said George H. Nute, deceased."

In Dazey v. Laurence, 153 Mo. App. 435, l. c. 441, 134 S. W. 85, the Springfield Court of Appeals in speaking of a similar situation said:

"One of the requisites to the exercise of equitable jurisdiction is the absence of an adequate remedy at law. Equity does not supplant the law, but only lends its aid when the legal remedy is in some way inadequate. The real end sought to be attained in this case is damages for a breach of contract and security for such damages. Why should the security be exacted, and what reason is there for asking a court of equity to enforce it as a lien upon the land in question? If defendant, Frank Elvin, who breached his contract, is solvent so that a money judgment can be collected by execution, then plaintiff has an adequate remedy at law, and there is no occasion for him to apply to a court of equity for protection. There is no testimony whatever in this case as to whether defendant, Frank Elvin, was solvent or insolvent. Plaintiff charged him to be insolvent, but this is put in issue by the answer of Laurence, and since plaintiff is only seeking to recover and enforce collection of a money judgment, the burden was upon him to prove the insolvency of Frank Elvin in. order to place himself in a position to insist upon his right to have his demand made a lien upon the land Frank Elvin had agreed to pledge as security for his debt to plaintiff. Having failed to do this he has failed to show any ground for equitable relief."

Without the allegation that George H. Nute agreed to secure the relator or an allegation that the estate is insolvent we do not believe that the relator would be entitled to the lien as prayed for in the petition.

Moreover, the allegation that "the said obligation of said George H. Nute to pay plaintiff the sum of $25,000 became, was and is a charge and lien on all the said property which he, the said George H. Nute, owned," is a mere conclusion and has no force as an issuable fact essential to the statement of a cause of action. [Musser v. Musser, 281 Mo. 649, 221 S. W. 46.]

The allegation that George H. Nute deeded the Cass County land to the defendants, J. Clarence Fry and Robert W. Pringle, without a sufficient or valuable consideration is no concern of the relator when he failed to allege in his petition that the estate was insolvent. Before this deed could be set aside it would first be necessary for the relator to allege and prove that the estate was insolvent and to

establish his claim as a creditor of the estate. [Merry v. Fremon, 44 Mo. 518; Humphreys v. Atlantic Milling Co., 98 Mo. 542, 10 S. W. 140; Lyons v. Murray, 95 Mo. 23, 8 S. W. 170.]

The allegation in the petition to the effect that a large amount of personal property was not inventoried is not sufficient to make this a case in equity. Section 63, Revised Statutes 1929, provides a method for the executor or administrator or other person interested in the estate to discover assets of the estate that are not inventoried by filing an affidavit to the effect that a person has concealed or embezzled or wrongfully withheld property belonging to the estate. We do not see how the relator can be a person interested in the estate unless he is a creditor of the estate and its assets are insufficient to pay its debts. Unless there is some purely equitable ground stated to determine the title to the property that is alleged to belong to the estate, the probate court has exclusive jurisdiction to determine whether there has been any property concealed or embezzled, or otherwise wrongfully withheld from the assets of the estate.

In the case of Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S. W. 116, we said:

"The appellant claims that the circuit court had no jurisdiction of the subject-matter of this action, and that the proper proceeding was that undertaken and carried through by the probate court under Section 62, Revised Statutes 1919, where the executor, administrator, or other person interested in any estate might start a proceeding in the probate court on a showing that some person 'has concealed or embezzled, or is otherwise wrongfully withholding any goods, chattels, money, books, papers or evidences of debt of the deceased.'

"In support of that position the appellant cites among other cases, Clinton v. Clinton, 223 Mo. 371, 123 S. W. 1, and Brewing Co. v. Steckman, 180 Mo. App. 320, 168 S. W. 226. The opinion in the Clinton case reviews and adopts an opinion by Judge Goode in In re Estate of Huffman, 132 Mo. App. 44, 111 S. W. 848. The Huffman case and the Clinton case, therefore, taken together, announce the rule contended for by appellant as strongly as it may be put. In a proceeding to discover assets, the probate court has jurisdiction to try the issues raised, and in doing so may determine the title to the property alleged to be withheld. If the person against whom the proceeding is instituted claims the title to the property by gift of the deceased, or otherwise, the probate court has jurisdiction to try the title.

"It is a general rule that a probate court has no equitable jurisdiction; no jurisdiction to try issues which are purely equitable in their nature, and where the relief demanded is equitable.

"In State ex rel. v. Shackelford, 263 Mo. l. c. 63, 172 S. W. 350, quoting from State ex rel. v. Bird, 253 Mo. l. c. 580, 162 S. W. 122, Ann. Cas. 1915C, 1353, it was said: 'While the rule announced in

the two cases last cited is undoubtedly sound law, I am not willing to concede that a probate court has jurisdiction to entertain a suit or proceeding, the sole basis of which is a demand for equitable relief, even though such relief should incidentally pertain to some matter of probate jurisdiction.'

"Numerous cases are cited by respondent to the effect that the probate court has no jurisdiction of strictly equitable issues."

As we see the petition, the relator's cause of action is one for damages for the failure of George H. Nute to give him $25,000 when he became of age and $5000 for the use of the good will of the firm, or if George H. Nute died prior to the time the relator became of age, then he agreed to make a will leaving the relator $25,000. The failure to make a will under such conditions leaves the relator with an adequate remedy at law as he has an action for a breach of the contract.

In Morrison v. Land, 169 Cal. 580, 147 Pac. 259, the Supreme Court of California said:

"There is no dissent in the authorities from the proposition that one may make a valid contract with another to devise or bequeath property by his last will in a certain specified way. It is clear that in the event of a breach of such a contract, the party damaged has an action at law for the damage caused by such breach of the promisor, and in some cases this, by reason of the circumstances, may be his only remedy, for a resort to any equitable remedy can be had only where the circumstances are such as to make the case one within the well-settled principles relative to the proper exercise of equitable jurisdiction."

In Ex parte Simons, 247 U. S. 231, 38 Sup. Ct. 497, 62 L. Ed. 1094, the Supreme Court of the United States said:

"No doubt alleged contracts to make a provision by will must be approached with great caution in the matter of proof, but there is no doubt that if proved they are valid so far as no statute intervenes. So much seems to be assumed by the order of the judge, and is the law we believe of New York as well as of other states and England. But if valid we see no reason why a contract to bequeath a certain sum should not give rise to an action for damages if broken, as certainly as a contract to pay the same sum in the contractor's life, or at the moment of the contractor's death. . . . If we are right, the order was wrong and deprived the plaintiff of her right to trial by jury."

We do not believe that the case of Hall v. Getman, 121 Mo. App. 630, 97 S. W. 607, cited by relator, is in point. In that case the deceased promised the plaintiff that if she would come and live with her until her death, she would give plaintiff all of her property. Deceased did not promise to give any specific amount of money but all of her property. In that case plaintiff brought an action to re-

cover damages for breach of the contract. The Kansas City Court of Appeals in its opinion said:

"To permit plaintiff in the law action to recover the estimated value of the property mentioned in the contract would be, not only a flagrant violation of the statute requiring wills to be in writing, but it would be putting into an unalterable judgment, and thus making fixed and definite, that which, under the terms of the contract, is, in its very nature, indefinite and contingent. The contract contemplated that the demands of creditors of all classes should be satisfied in full out of the estate before plaintiff should receive anything, but, if plaintiff is permitted to recover a money judgment for the estimated value of that residue and thereby become a creditor of the estate, it is not only possible, but very likely, that her claim, added to the other proven demands, would exceed the amount of the proceeds actually derived from the administration of the estate, and other creditors, being compelled to prorate with her, would receive less than full payment, and thus plaintiff would obtain more than the contract entitled her to receive. The opinion of witnesses and the judgment of the jury, may easily err in estimating the value of the property, and, until the time for proving demands against the estate has expired, the witnesses may err in their statement of the amount and character of the indebtedness of the estate. To impose any part of the burden of such mistakes on the creditors would be in direct violation of the terms of the contract, and for that reason, if for no other, should not be permitted."

The relator contends that even if the original case, brought by the relator in the Circuit Court of Cass County, was an action in law, that court would have original and concurrent jurisdiction with the probate court and relator's action was rightfully brought in that circuit court. There is no doubt that under Section 189, Revised Statutes 1929, the Circuit Court of Cass County had jurisdiction of the subject-matter of the cause of action alleged in the petition. This section is as follows:

"Any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceedings, and exhibit a copy of such judgment or decree, and shall also exhibit copies of all judgments or decrees rendered in the lifetime of the deceased to the probate court, and when a claim is allowed against an estate which is secured by mortgage, deed of trust or other lien held by the creditor, the same may be allowed as other claims, but shall not be paid until such security held by the claimant has been exhausted; but if such security be not sufficient to pay off and discharge the debt of such creditor, then such creditor for the residue of his debt shall be entitled in common with other creditors to have the same paid out of the estate."

As the relator lived in the State of California and none of the

defendants lived or were served with process in Cass County, the question then is, did that court have jurisdiction over the persons of the defendants? Relator contends that Section 189, supra, allows a claim against an estate to be established in the first instance by a judgment in the circuit court and that Section 5, Revised Statutes 1929, gives the circuit court of the county, in which the estate is being probated, jurisdiction over the persons of the defendants even though the defendants were served by summons in another county. Section 5, supra, is as follows:

"All orders, settlements, trials and other proceedings contemplated by articles one to thirteen, inclusive, of this chapter shall be had or made in the county in which the letters testamentary or of administration were granted."

We do not agree with the relator. If his contention is correct, then under Section 5, supra, the circuit court of the county in which the estate is being administered would have exclusive jurisdiction to by demands against the estate. Section 189, supra, provides that such demands may be established by judgment or decree of *"some court of record"* and "in the ordinary course of proceedings." We believe that Section 5, supra, relates only to proceedings in the probate courts and has nothing to do with suits in the circuit courts. After the judgment is obtained in the circuit court it is then necessary for the proper probate court to classify the claim. In the case of Green v. Strother, 201 Mo. App. 418, 212 S. W. 399, in speaking of Section 189, supra, the Kansas City Court of Appeals said:

"The statute simply provides that the claimant may elect to first go into a court of record and establish his claim against the estate there by the same kind of proceeding that he would pursue if the deceased had not died, but was sued while living." In the case of Yarde v. Hines, 238 S. W. 151, l. c. 153, 209 Mo. App. 547, in discussing Section 5, supra, the Kansas City Court of Appeals said:

"It is insisted that the Circuit Court of Jackson County was without jurisdiction over the subject-matter because the suit could be brought only in Macon County where plaintiff was appointed administratrix. In support of this defendant cites Section 5, Revised Statutes 1919. This statute relates to the administration of estates in the probate court, and has nothing to do with suits of this character. This suit was properly brought under Section 1180, Revised Statutes 1919."

We, therefore, believe that the Circuit Court of Cass County did not have jurisdiction over the persons of these defendants and that proceedings of this character are governed by Section 720, Revised Statutes 1929, and that the respondent correctly ruled on the plea in abatement. The writ of mandamus is, therefore, denied.

PER CURIAM:—The foregoing opinion by TIPTON, J., in Division Two is adopted as the opinion of the Court en Banc. *Leedy, Atwood*

and *Frank, JJ.,* concur; *Ellison, J.,* dissents in separate opinion; *Gantt, C. J.,* dissents and concurs in dissenting opinion of *Ellison, J.; Hays, J.,* absent.

ELLISON, J. (dissenting).—I respectfully dissent from the holding in the principal opinion that a suit in the *circuit court* to establish a demand against the estate of a decedent under our probate law, Section 189, Revised Statutes 1929, is not a local but a transitory action, the venue of which is fixed by Section 720, Revised Statutes 1929. This latter section, in the Code of Civil Procedure, provides actions shall be brought (1) in the county where the defendant resides; (2) in the county where the plaintiff resides and the defendant may be found; (3) where there are several defendants residing in different counties, in any such county. There are still other provisions in the section providing for situations where all or a part of the defendants are nonresidents. If Section 720 is applicable to suits in the circuit court to establish probate demands it results that an executor or administrator defending an action to establish a demand against his estate may be sued in the county where he resides, or in any county in the State where the plaintiff resides and he may be found, or in any county where a codefendant lives, although the administration of the estate is proceeding in the probate court of a different county.

In such actions the estate is the actual party in interest, must foot the bill and pay the costs. That it should, in the contingencies mentioned, be amenable to suit in any of the several counties of the State, rather than in the county of its domicile where the probate administration is actually pending; that it should be made the victim of the peregrinations of its mere representative, the executor and administrator, perhaps traveling about on business of his own— all this seems to me to be harsh and unjust. The statute ought not to be so construed if it is reasonably susceptible of the other and more natural construction. In my opinion Section 5, the special venue statute in Chapter I, Revised Statutes 1929, containing our administration and probate law, applies to suits in the circuit court to establish probate demands as well as to proceedings in the probate court for the same purpose, and both must be brought in the county where the estate is being administered. The two sections, Sections 5 and 189, Revised Statutes 1929, have been in our statutes for 100 years or more. From a procedural standpoint the question here raised is important. It is singular that during a century the point has not been decided and the two statutes construed together.

The part of Section 189, Revised Statutes 1929, on which the holding of the principal opinion is based, is substantially in the

same form as when it was first enacted by Revised Statutes 1825, Section 52, page 113, and is as follows:

"Any person having a demand against an estate, may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, and exhibit a copy of such judgment or decree, and shall also exhibit copies of all judgments or decrees rendered in the lifetime of the deceased to the probate court . . ." (The part of the section omitted from the above quotation has to do with the allowance of secured claims, and was added by amendment in 1889, Sec. 190, R. S. 1889.)

. Section 5, Revised Statutes 1929, with a difference we shall presently note, was first enacted by Revised Statutes 1835, Section 3, page 41, and is now as follows:

. "All orders, settlements, trials and other proceedings contemplated by articles one to thirteen, inclusive, of this chapter, shall be had or made in the county in which the letters testamentary or of administration were granted."

. Section 5 just quoted is in Article I of Chapter 1, Revised Statutes 1929. Section 189 first above quoted, is in Article VII of the same chapter, that is, it is in one of the thirteen articles designated by Section 5. So, if a suit in the circuit court to establish a demand under Section 189 is a "trial" or "other proceeding" "contemplated" by Article 13, it must be "had or made" in the county where letters testamentary or of administration were granted. I do not see how it can be considered anything else.

As against this view two arguments are made. The first is that Section 5 refers only to such orders, settlements, trials and proceedings as are had or made in the *probate* court. Looking at Section 5 alone I can see no justification for this contention. The statute plainly says *all* trials and other proceedings contemplated by the thirteen articles mentioned shall take place in the *county* of the probate administration. Article VII, containing Section 189, is one of these thirteen articles. Section 5 says nothing which would restrict its application to probate court proceedings. If that is its purpose why should it be enacted at all, since proceedings in the probate court necessarily would have to be in the county where the court is.

. But it is asserted, secondly, that Section 189 says any person having a demand against an estate may establish the same by the judgment or decree of *some court of record, in the ordinary course of proceeding;* and the insistence is that this language means *any* court of record according to the usual course of proceeding—that is, whatever court the action should be brought in under the general venue statute, Section 720 in the Code of Civil Procedure. This section possibly may permit of that construction, but the meaning is not clear enough to justify such interpretation if the statute is hereby brought into conflict with Section 5. "Some court of record" might

mean whichever of the several courts of record of the State may happen to be in the county where the administration is pending, and the expression "in the ordinary course of proceeding" may refer to the form of action and signify the same *kind* of suit as would ordinarily be brought in a court of record on a claim of the nature involved against a living person. It was so construed in Green v. Strother, 201 Mo. App. 418, 422, 212 S. W. 399, 401.

 Turning away from the two statutes a minute to the general law, and the decisions thus far rendered in this State touching the subject. The doctrine stated in 24 Corpus Juris, section 1903, page 768, is as follows:

"As a general rule, an executor or administrator cannot sue or be sued in any jurisdiction other than the one in which he was appointed. A personal representative may be sued in the county in which he resides, or where he is found, unless the estate is being administered in another county. It is sometimes required by statute that an action against an executor or administrator should be brought in the county where the estate is being administered, and such a provision has been held to apply to an action against an executor or administrator who is sued together with other defendants who are not representatives of the estate, although it has also been asserted that, when an administrator is a necessary party to an action, he may be sued in any county where any of his codefendants reside."

There are two cases in this State which refer to Section 5. The first is Yarde v. Hines, 209 Mo. App. 547, 238 S. W. 151, decided by the Kansas City Court of Appeals in 1921 and referred to in the principal opinion. I do not think it is in point. It was a suit under the Federal Employers' Liability Act by an administratrix for the wrongful death of her intestate. She was plaintiff, not defendant, and the suit was against the Director General of Railroads. In the course of the opinion the court said:

"It is insisted that the Circuit Court of Jackson County was without jurisdiction over the subject-matter because the suit could be brought only in Macon County where the plaintiff was appointed administratrix. In support of this defendant cites Section 5, Revised Statutes 1919. This statute relates to the administration of estates in the probate court and has nothing to do with suits of this character. This suit was properly brought under Section 1180, Revised Statutes 1919."

The section mentioned in the quotation, Section 1180, Revised Statutes 1919, was the section in the Code of Civil Procedure fixing the venue for suits against corporations, now Section 723, Revised Statutes 1929. On its facts the case ruled correctly. In a suit *by* an administratrix as plaintiff the venue of the cause is the same as in any ordinary civil action. It has long been the law that an administrator or representative "is the proper person to bring any

kind of civil action'' necessary to the collection of a debt due the, estate of which he is the legal representative, Cheely's Admr. v. Wells, 33 Mo. 106, 109; and his authority is coextensive with the boundaries of the State, Emmons v. Gordon, 140 Mo. 490, 498, 41 S. W. 998, 1001. But it is not true that Section 5, Revised Statutes 1929 ''relates only to the administration of estates in the probate court;'' at least it is not confined to *proceedings* in the probate court. The Court of Appeals evidently momentarily overlooked the fact that further over in the administration law was a section authorizing suits in the circuit court against the estates of decedents.

The other case referring to Section 5, Revised Statutes 1929, is Repetto v. Walton, 313 Mo. 182, 197-8, 281 S. W. 411, 416, decided by Division One of this court in 1926. In that case the widow of the decedent; who was also administratrix of his estate in the city of St. Louis, brought a suit as plaintiff against the defendant Walton and herself in her capacity as executrix. The suit was brought in Montgomery County. It was charged the defendant Walton had acted as her attorney in the administration of her husband's estate in St. Louis and had fraudulently misled her into making a final settlement showing a balance for distribution very much less than actually belonged to the estate. The allegation was that the defendant Walton appropriated the excess funds and used them to pay off encumbrances on land belonging to him in Montgomery County. In the action the plaintiff widow prayed that her final probate settlement in the city of St. Louis be set aside and that a lien be charged on the defendant Walton's lands in Montgomery County in favor of the estate, or the heirs, for the amount of which they had been defrauded.

The circuit court sustained a demurrer to the petition, one assignment of which charged a misjoinder of causes of action, and the plaintiffs appealed. Speaking of the claim of misjoinder this court said Section 1221, Revised Statutes 1919 (Sec. 765, R. S. 1929), requires that causes of action which may be united in the same petition must '' 'not require different places of trial.' '' In this connection the opinion referred to the fact that the action was to set aside a probate settlement and was brought in the court of a county other than that in which the administration was had. As bearing on this proposition the court said:

''Section 5, Revised Statutes 1919, is as follows: 'All orders, settlements, trials and other proceedings contemplated by Articles One to Thirteen, inclusive, of this chapter shall be had or made in the county in which the letters testamentary or of administration were granted.'

''Ordinarily, in an action to set aside a final settlement the administrator or executor would be made a defendant.

'' 'As a general rule, an executor or administrator cannot sue or

be sued in any jurisdiction other than the one in which he was appointed. A personal representative may be sued in the county in which he resides, or where he is found, unless the estate is being administered in another county.' [24 C. J., p. 768, sec. 1903.]''

But after having gone into the matter thus extensively, the Repetto case did not decide the question as to whether the case had been brought in the proper venue, the decision passing off on the proposition that the causes of action united in the petition were improperly joined for another reason. So the case cannot be considered an authority though the direct inference of the opinion is that Section 5 of our probate law does apply to suits in the circuit court.

Now turning to Section 189. There are a number of cases holding suits may be brought in the circuit court on demands against the estates of decedents, and it is said the jurisdiction of the circuit and probate courts is ''concurrent.'' Nearly always the facts of the case show the suit *was* brought in the county where the estate of the decedent was under administration. However, there are three cases which have a bearing. In The Madison County Bank v. Suman, 79 Mo. 527, judgment had been obtained against an administratrix in the Federal court for the Western District of Missouri. The opinion tacitly concedes this judgment was entitled to allowance as a demand against the estate of the administratrix's intestate, and devotes itself entirely to a discussion of other questions. But in Stephens v. Bernays, 119 Mo. 143, 147, 24 S. W. 46, 47, it was squarely held that under what is now Section 189 a demand against the estate of a decedent could be established by suit in the Federal court and that the expression ''some court of record'' in that section is broad enough to cover suits in Federal courts. This decision, however, overlooks the fact that in the opinion of the United States Circuit Court of Appeals affirming the very judgment it was considering jurisdiction to render judgments against the legal representatives of the estates of decedents was asserted wholly independent of any state statute, Stephens v. Bernays, 44 Fed. 642; and such has long been the law, Byers v. McAuley, 149 U. S. 608, 615, 620.

The third case is Wernse v. McPike, Admr., 100 Mo. 476, 13 S. W. 809, decided in 1890. In that case an estate was in course of administration in the Probate Court of Ralls County. The decedent had signed a note along with another maker who resided in St. Louis County. Suit on the note was brought in St. Louis County against both the resident maker and the administrator of the decedent, service on the administrator being obtained in St. Louis County when he happened to be there. It was held by the Supreme Court the Circuit Court of St. Louis County had jurisdiction. However, in none of these three cases is Section 5 of our administration law mentioned or considered.

When Section 5 was first adopted in 1835 probate jurisdiction was

lodged in county courts. [R. S. 1835, sec. 15, p. 156.] They had exclusive jurisdiction of demands not exceeding $100 against the estates of decedents and concurrent jurisdiction with "the circuit court" (not courts) above that amount. The form of the statute when passed as Section 3, page 41, Revised Statutes 1835, was as follows (italics ours):

"All orders, settlements, trials and other proceedings *entrusted by this act to the county court*, shall be had or made in the county in which the letters testamentary or of administration were granted."

It will be noticed the statute was substantially the same as now except that the trials and proceedings referred to were those entrusted by law to the county court. This would rather tend to bear out the argument of relator mentioned in the beginning of this opinion that Section 5 now covers only trials and proceedings in the probate court.

Jurisdiction of probate matters thus remained generally in the county court for thirty years, through the Revisions of 1845 and 1855, R. S. 1845, sec. 8, p. 92; R. S. 1855, sec. 15, p. 534. And during all that time Section 5 continued in form as when enacted in 1835. [Sec. 4, p. 63, R. S. 1845; Sec. 4, p. 113, R. S. 1855.] Through the period numerous special acts were passed creating probate courts in various counties. Laws 1865-6, page 83, established such courts in twenty-seven counties and gave them exclusive jurisdiction "to hear and determine *all* suits and other proceedings instituted against executors and administrators, upon *any* demand against the estate of their testator or intestate." They had concurrent jurisdiction with "the circuit court" (not courts) on some matters, but not on probate demands.

In view of these changes, in the revision of our statutes in 1865 the section vesting jurisdiction of probate matters in the county courts was modified by adding "when not otherwise provided by law," G. S. 1865, sec. 7, p. 556; and the present Section 5 was changed by striking out the words "entrusted by this act to the county court" and inserting in lieu thereof "contemplated by this chapter," so that the section read (G. S. 1865, sec. 4, p. 480):

"All orders, settlements, trials and other proceedings contemplated by this chapter, shall be had or made in the county in which the letters testamentary or of administration were granted."

But the Revision of 1865 was not divided into chapters and articles. The arrangement was by "Titles" subdivided into chapters, each title being what would now be a chapter, and each chapter that would now be an article. The "chapter" referred to in Section 4, just quoted, dealt only with the appointment and removal of executors and administrators and did not include the entire administration law.

In 1879 (the Constitution of 1875 meanwhile having provided for

a uniform system of probate courts all over the State) Section 5 was left standing just as it appeared in the Revision of 1865—that is, referring to ''all orders, settlements, trials and other proceedings contemplated by this chapter.'' But the statutes of 1879 were divided into chapters and articles, Chapter I, in which Section 5 appeared, containing all the administration. law. The reference therefore was to the whole field of that law.

The section remained in that form for thirty years, through the Revisions of 1889 and 1899. In the 1909 revision, where the present Section 5 appeared as Section 13, it was changed to read as it does now, referring to ''all orders, settlements, trials and other proceedings contemplated by *articles I to XIII*, inclusive, of this chapter.'' (Italics ours.) So it has stood for the last twenty-five years, about. There were twenty-one articles in Chapter I, Revised Statutes 1909, the same in the Revision of 1919, and twenty-two articles in Chapter I of the present revision. The section as it has continued since the last change singles out the first thirteen of these articles and says all trials and proceedings contemplated by *them* shall be had in the county where letters were granted.

Section 189, authorizing establishment of demands against the estate of a decedent in a court of record, is in one of those articles—Article VII. Ordinarily that method is but a substitute for obtaining the allowance of a demand in the probate court—or, at least, as the cases say it is a concurrent method. The two sections providing for the enforcement of probate demands—Section 189 by suit in the circuit court, and Section 190 by proceeding in the probate court—have stood side by side in the same article for many years. How can it be said one is not contemplated by the articles and the other is; or that one is not a trial or proceeding and the other is?

Where the suit is against the executor or administrator to enforce a claim against the estate he represents it seems to me more practical that the action should be brought in the county where the administration is pending, where the court records are, where the deceased resided, and where the proof, ordinarily, would be more accessible. Is this not preferable to compelling the estate, the real party in interest, to defend suits all over the State? It is held probate courts must not close administrations before suits against the legal representative in other courts of record are ended. [State ex rel. Knisely v. Holtcamp, 266 Mo. 347, 181 S. W. 1007.] Is it good policy to bind the probate court in charge of an estate with knowledge of what may be going on in any or all of the other courts of record in Missouri?

There may be complications, were the administrator or executor is sued for some breach or default of his own affecting the estate, or where land titles are involved, or where there are a number of defendants; but the general rule elsewhere would hardly be as it is if

these considerations outweigh the convenience to the estate. One thing is certain: the construction of the law contended for in this opinion would not create difficulty in obtaining service of process on the executor or administrator even if he should happen to live in a different county from that in which the administration is being carried on as a California case suggests. The suit can be brought in the county of the administration and the administrator can be served where he lives, as in the case of corporations. [See St. Charles Sav. Bank v. Thompson (Mo.), 210 S. W. 868, 871.]