ROBERT H. FROST, ADMINISTRATOR OF THE ESTATE OF ANNA L. TIMM, DECEASED, APPELLANT, v. HERMAN TIMM, RESPONDENT.—176 S. W. (2d) 833.

Kansas City Court of Appeals. December 6, 1943.

*Frank W. Armstrong* for appellant.

*D. F. Bennett* and *R. H. Musser* for respondent.

124

BOYER, C.—This is an appeal from an order and judgment dismissing plaintiff's petition after the trial court had sustained a demurrer raising a question of jurisdiction. The suit was first filed by plaintiff in his capacity as guardian of the person and curator of the estate of Anna L. Timm who was an incompetent adult. The petition was filed during the lifetime of the ward, and sought recovery of both actual and punitive damages, separately stated, on the alleged ground that the defendant had wrongfully, unlawfully, maliciously and fraudulently converted to his own use and disposed of certain specified property and assets alleged to be the property of the ward. It charged that on the 18th day of July, 1939, plaintiff was lawfully possessed of the property in question and described it as consisting of farm machinery, 400 bushels of corn, three stacks of hay and other feed, all of the total value of $430; that after said date and on the 5th day of August, 1939, "said goods and chattels came into possession of the defendant, who then and there unlawfully converted to his own use and disposed of the same, except the said three stacks of hay in field; that the said hay stacks were located on the farm of the said Anna L. Timm in Clinton County, Missouri; that the Atchison, Topeka & Santa Fe Railroad runs through the said premises and that sparks of fire escaped from the locomotive belonging to said railroad and set fire to said hay stacks and the same were totally destroyed; that the defendant falsely and fraudulently represented to said railroad company that he was the true and lawful owner thereof and relying upon said representations the said railroad company made a settlement with the defendant and paid to him the sum of $150 for damages, which said sum the defendant unlawfully converted to his own use."

To the foregoing petition defendant filed a general denial. Thereafter the ward died, and plaintiff was duly appointed and qualified as administrator of her estate, and upon his petition the cause was revived in the name of the administrator, and thereafter plaintiff filed his supplemental petition reciting the facts of the original insti-

tution of the action, the death of the ward, the appointment and qualification of plaintiff as administrator of the estate of deceased, the revival of the action in the name of the administrator, and then alleged the same facts set forth in the original petition in reference to the conversion of the property therein described and the disposition thereof by the defendant, and prayed for damages, actual and punitive, as originally claimed.

Defendant filed a general denial to this petition, and thereafter a plea to the jurisdiction based on the assertion that the probate court had sole and exclusive jurisdiction of the matters alleged in the petition. This plea was overruled, and defendant further answered by a general denial and a plea to the effect that he owned all of the property in question by purchase from the guardian duly authorized by an order of sale of the probate court and evidenced by a bill of sale executed by the guardian; and that he paid all sums due the guardian for said property.

Plaintiff moved to strike the greater portion of said answer which motion was overruled and plaintiff then replied by a general denial.

With the issues thus framed, a jury being waived, the court heard plaintiff's evidence. Admissions showed the authority of plaintiff to act in the representative capacities of guardian and curator of the estate of the ward, and also as administrator after the death of the ward. Plaintiff put in evidence various exhibits including the inventory and appraisement procured by him as guardian; his application to sell certain specified articles of personal property at the appraised value to the defendant; the order of court authorizing said sale, and the guardian's bill of sale. There was evidence that at the time Anna L. Timm was adjudged incompetent she was about seventy-seven years of age and lived upon her farm of 152 acres with the defendant who was her son. When the guardian and the appraisers appeared at the farm to inventory the ward's estate the defendant accompanied them and pointed out various articles of property of Anna L. Timm including household goods, chickens, livestock, farm machinery, and fifty bushels of corn. These specific articles were appraised at the total value of $1011. In addition thereto the inventory showed a substantial amount of notes, U. S. savings bonds, money in the bank and time deposits. None of the articles or property described in the petition were inventoried and appraised, and plaintiff testified that he had no knowledge of the existence of said property, or that it belonged to the estate of his ward, until some time after the consummation of the sale to defendant of the items of property listed in the inventory. He stated that the defendant "came to me and was telling me how he skinned me on this inventory, that four or five hundred bushels of corn down in the crib he said that all of you just missed." Plaintiff then made a list of some property which he said defendant informed him belonged to Anna L. Timm, including

400 bushels of corn. Plaintiff also listed certain farm implements including a grain binder and cultivator which he said he found on the back side of the farm out of sight of the house when the inventory was made, that were not included in the inventory. He further stated in reference to the hay that was burned that defendant told him he received $150 or $175 for it. There was also evidence that upon demand by the guardian the defendant promised to pay $500 at a specified date in settlement for the property in question, but failed to do so. After the guardian obtained information from defendant, such as above recited, he went to the farm but did not find the corn or hay. The corn had been fed to the hogs and the hay burned. He did not know that the property had been there but defendant gave him that information.

On cross-examination of plaintiff it was developed that while he was still acting as guardian and before settlement he learned of this additional property, but did not file any motion in the probate court to locate assets. After the death of the ward the guardian made his final settlement as such and assumed charge of the assets of the estate as administrator.

One of the appraisers for the guardian also testified that he went to the farm to appraise the property with the plaintiff and the other appraisers; that the defendant was the only other man there; that he did not see a crib of corn containing four or five hundred bushels; that he could see only a small stack of hay and defendant said it had been there several years, and it was not appraised.

The court called for and had put in evidence the inventory and appraisement of the estate of the deceased which had been filed by the administrator. Such inventory does not include any claim against the defendant.

Defendant offered no evidence but filed a demurrer based mainly on grounds variously stated, but similar in effect, and to the point of alleging that the probate court was vested with exclusive jurisdiction of plaintiff's claim as the court of first instance and that the circuit court was without jurisdiction. The court found that the demurrer should be sustained and the judgment reads as follows:

"Therefore, it is considered, ordered and adjudged by the court that defendant's demurrer be and the same is hereby sustained, the petition of plaintiff be and the same is hereby dismissed; and that defendant go hence hereof without day and recover of the plaintiff his costs herein expended and incurred, and have execution therefor."

After an unsuccessful motion for a new trial plaintiff duly appealed. One of the assignments of error urged by appellant is the following:

"The court erred in sustaining defendant's demurrer at the close of all the evidence offered by plaintiff and the defendant, but basing the judgment herein on the finding by the court that the Circuit Court of Clinton County, Missouri, is without jurisdiction to try said cause."

A similar assignment was presented to the trial court in the motion for new trial.

From the contents of the demurrer, which was sustained by the court, and the position of the respective parties on appeal there can be no doubt that the demurrer was ruled and plaintiff's petition dismissed on the ground that the circuit court lacked jurisdiction of the cause.

Appellant's position is that the original action was in tort, that is, "an action of trover for conversion," and that jurisdiction of the ward's action was in the circuit court.

It is respondent's position, as shown by the demurrer and by his brief, that the proceeding instituted in the circuit court was one cognizable only by the probate court, because plaintiff, seeking to recover assets, was required to proceed pursuant to the provisions of the administration code, sections 63 to 66 inclusive, Revised Statutes Missouri 1939, to discover and recover assets. To support such position respondent says: "It is the well-recognized law of this State that the probate courts have sole and exclusive jurisdiction of all controversies arising from the accounting, concealment, withholding, or embezzlement of assets of estates, and that all proceedings for the recovery of assets must originate in the probate court."

Chief reliance is placed upon what is said in the opinion in the case of Davis v. Johnson, 332 Mo. 417, 58 S. W. (2d) 746. That opinion and many others, evidenced by cases cited in respondent's brief, are illuminating and decisive as to the nature and character of a proceeding instituted under the provisions of the statute referred to above, and the applicability thereof for the discovery and recovery of assets claimed for the estate of a decedent. When such proceeding is authorized and instituted it is designated an action within the meaning of the law, and as such is exclusively cognizable by the probate court as the court of first instance, save only where there may be sufficient reasons disclosed in exceptional cases why the matter in whole or in part might not be tried in the probate court. As stated in the case of State ex rel. Nute v. Bruce, 334 Mo. 1107, 1115, 70 S. W. (2d) 854: "Unless there is some purely equitable ground stated to determine the title to the property that is alleged to belong to the estate, the probate court has exclusive jurisdiction to determine whether there has been any property concealed or embezzled, or otherwise wrongfully withheld from the assets of the estate." There are many rulings and much authority to the same effect, but all of the cases to which attention has been called relate to proceedings instituted by or against an administrator or executor, or by some one interested in the estate.

Respondent also cites Section 400, Revised Statutes Missouri, 1939, as indicative of the procedure required by a guardian when seeking to recover assets of his ward, said to have been concealed or embezzled; and providing that the procedure shall be the same as provided by

law respecting persons suspected of concealing or embezzling effects of a testator or intestate. The section referred to applies only to proceedings by guardians and curators of minors. It is contained in a separate and distinct article applicable to the administration of the estates of minors. There is no similar provision in the article providing for guardians and curators of insane persons. The question of jurisdiction as raised in this case properly brings under consideration only that part of the administration code pertaining to the guardianship and estate of an insane ward. The administration code contains twenty-two separate and distinct articles covering different and unrelated subjects. The provisions upon which respondent relies, sections 63 to 66 inclusive, Revised Statutes Missouri 1939, are contained in Article 2, and relate particularly to a method of discovery and recovery of assets belonging to a decedent. Article 16 contains the provision of Section 400, providing a similar method for the recovery of assets belonging to minors, and said article pertains exclusively to the appointment of guardians and curators of minors and proceedings in reference to the estates of minors. Article 18 pertains exclusively to guardians and curators of insane persons. A critical examination of this article reveals that there is no special method provided for the discovery and recovery of assets of an insane ward in the probate court similar to the provisions contained in Article 2 and in Article 16. Section 470 of the Article 18, prescribing in part the duties of the guardian of an insane person, provides that it shall be the duty of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward. The obvious distinction between the provisions of the different articles referred to, in the omission from Article 18 of any provision or method for the recovery of assets wrongfully withheld similar to the provisions in the other articles mentioned, appears to be highly significant, and to indicate a legislative intent that a person of unsound mind is not to be remitted to some proceeding in the probate court for the recovery of assets or damages to property, but shall have the same rights and privileges to institute and prosecute suits for damages, or otherwise, as any other litigant might have. The title to property of an insane ward is in the ward and not in the guardian, and suits instituted by such guardian must be in the name of the ward, by the guardian, as in the instant case. Nothing has been discovered which would deny the ward in this case the right to institute her action in the circuit court to recover damages for the conversion of her property in the same manner that a sane litigant might do. The action in this case was properly instituted, and the circuit court had jurisdiction of the parties and the subject matter. To give sanction to any other practice would deprive an insane ward of rights accorded to other litigants and be contrary to the policy of the law that all persons shall have equal rights to seek redress in the circuit

court, provided only that there be no special statute substituting some other remedy deemed adequate and exclusive. There is no such statute applicable to the claim of the ward in this case. Section 22, Article VI of the Constitution of Missouri provides that the circuit court shall have exclusive original jurisdiction in all civil cases not otherwise provided for.

No case has been discovered where the provisions of sections 63 to 66 have been applied, or sought to be applied, in settlement of the claims of an insane ward to property alleged to have been unlawfully concealed, embezzled or converted; and no decision has been discovered denying the right of an insane ward to seek damages in the circuit court for conversion of property. There is a case, Lack v. Brecht, 166 Mo. 242, 259, 65 S. W. 976, in which an action was instituted by the guardian of an incompetent person and the first count of the petition was based on trover and conversion on account of the defendant having appropriated to himself money belonging to the ward, and recovery was permitted on said count. The ward died during the pendency of the appeal and the action was revived in the name of the administrator. It does not appear that any question of jurisdiction ever occurred to the mind of learned counsel for defendant or to the court in that case.

Respondent further urges that the demurrer was properly sustained because the evidence fails to show that the property in question was that of Anna L. Timm at the time of her death. The demurrer was not based on any express allegation of failure of proof to make a submissible case and, as stated before, the demurrer was clearly ruled on the question of jurisdiction. Furthermore, the admissions of defendant testified to by plaintiff, and other evidence in the case, were sufficient *prima-facie* proof in plaintiff's behalf for submission to the trier of facts. Defendant should have been put to proof, upon failure of which the court should have proceeded to judgment according to the finding of facts in reference to the issues raised by the pleadings. The learned trial judge as well as counsel, no doubt, inadvertently overlooked the difference in the statutes pointed out above. The judgment of the court should be reversed and the case remanded for retrial. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the case remanded for retrial. All concur.