VIRGIE CHARLOTTON *et al. v.* A. T. GORDON, *Admr., et al.*

(No. 8800)

Submitted September 28, 1938. Decided November 22, 1938.

*Steptoe & Johnson, Stanley C. Morris, W. F. Wunschel,* for plaintiff in error.

*J. Raymond Gordon, H. D. Rollins, Harper & Baker* and *M. O. Litz,* for defendants in error.

MAXWELL, PRESIDENT:

This writ of error brings for review the judgment of the circuit court of Roane County rendered in favor of the plaintiffs in an action of assumpsit wherein there was filed a statutory interpleader.

Virgie Charlotton and eight other persons, plaintiffs, claiming to be the next of kin of Harry T. Winters, deceased, and entitled to have distributed among them the

personal estate of the decedent after payment of taxes and costs of administration, instituted this action against A. T. Gordon, administrator of the personal estate of the decedent, to enforce distribution.

Code, 56-10-1, authorizes interpleader in actions at law for the recovery of money. Acting under that statute Gordon, administrator, filed an affidavit and an amended affidavit averring that the amount of money belonging to the Winters estate, then in his control, was $17,971.48; that John Day Winters, Lou Wasenbach, Nell Radekin and Faye Wyckoff, non-residents of the State of West Virginia, also were claimants of the Winters estate on the ground that they were his nearest kin; further, that affiant is informed that the State of West Virginia, acting through Clarence W. Meadows, Attorney General, has asserted claim to the estate on the ground of escheat; that United States Fidelity & Guaranty Company is surety on the bond of affiant as administrator and has joint control with him of the funds of the Winters estate. In pursuance of the prayers of the interpleader affidavits, the Attorney General and United States Fidelity & Guaranty Company were summoned to appear in the case and protect their interests; also, an order of publication was executed against the non-resident claimants of the estate.

When the case came on to be heard in the circuit court, none of the parties named in the interpleader affidavits made appearance. Thereupon, a jury was impaneled and sworn "to try the issues and matters of fact arising in this suit." And having heard all the evidence, the jury returned a verdict in favor of the plaintiffs and against the administrator for $17,865.98. Immediately on the return of the verdict, judgment was rendered for the plaintiffs against the administrator for the amount found by the jury. A motion was made by the administrator to vacate the judgment and set aside the verdict.

Subsequently, at the same term of court, United States Fidelity & Guaranty Company appeared specially, and moved in writing that the judgment be vacated and the verdict set aside. In support of this motion it was as-

serted that the court did not have jurisdiction of the subject matter of the suit or of Gordon, administrator; that the verdict is contrary to the law and the evidence; and that the verdict and judgment are otherwise erroneous and improper for reasons appearing on the face of the record. These motions of Gordon, administrator, and the Fidelity Company were overruled. Writ of error was granted on the petition of the Fidelity Company.

There arises first for consideration the challenge by Charlotton and others, plaintiffs, of the right of the bonding company to seek a writ of error or be heard thereon. The basis of the objection is that the company was not a party to the suit and therefore has nothing at stake; that, although the interpleader statute, Code, 56-10-1, provides that a party interpleaded may be permitted "to make himself defendant", the company did not appear before judgment and did not seek to have itself made a defendant. The fact remains, however, that the company was brought into the case under the interpleader and is bound by the results thereof in any particular in which its interests may be affected thereby. As surety on the administrator's bond, it stands responsible for faithful accounting by him for all administration funds under his control. The surety is therefore vitally concerned that the funds be not paid out by the administrator under an authorization which may not be solidly grounded. The fact that the surety did not appear until after judgment was rendered is not important, because appearance was made at the same term, while the matter was still "within the breast of the court." If, when appearance was thus made by the surety, it specifically called to the court's attention fatal defects in the proceeding, the court should have vacated the judgment and set aside the verdict. We are of opinion, therefore, that the surety not only had a right to make appearance in the trial court and move to annul the proceedings, but, in addition, may prosecute in the appellate court a writ of error bringing under review the entire matter in the trial court.

From the interpleader affidavits filed herein by the ad-

ministrator it appears that he was appointed as such fiduciary by the county court of Ohio County; that the estate of the decedent was referred to a commissioner of accounts of that county; that debts against the estate were proved before the commissioner, and the same were allowed by him and paid by the administrator; that opposing and contending groups of persons claiming to be next of kin of the decedent and, consequently, distributees of his estate filed their respective claims before the commissioner; that the finding of the commissioner respecting distribution was reviewed by both the county court and the circuit court, and that the circuit court "did not direct to whom or to what persons, the balance of the money remaining in the hands of affiant (administrator) should be paid." Thus the circuit court of Roane County was advised that the administrator was an appointee of the county court of Ohio County; that the probate proceedings had there taken place, and that the question of distribution of the Winters estate had been before the courts of that county. Was a jurisdictional question thus raised? Want of jurisdiction of subject matter need not be raised in any particular manner. But when there arises in a case disclosure of want of jurisdiction, the case will be dismissed. *Buskirk* v. *Ragland,* 65 W. Va. 749, 65 S. E. 101; *Thacker* v. *Hubard,* 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414.

By appearing in this action and filing affidavits of interpleader the administrator submitted his person to the jurisdiction of the court, and waived any question of venue which might have been raised by him; but, considering the Ohio County background above stated, did the circuit court of Roane County have jurisdiction of the subject matter of this action?

It is not usual that there be appointment of an administrator residing in a county other than the county wherein the probate proceedings take place. But there is nothing in our statutes to inhibit such appointment. There are many cases from other jurisdictions holding that transitory actions against administrators and executors

may be maintained in the county of their residence, though that be not the county of their appointment. *Forsee's Admx.* v. *Forsee,* 144 Ky. 169, 137 S. W. 836; *Thompson* v. *Wood,* 115 Cal. 301, 47 Pac. 50; *People's Bank* v. *Wood,* 193 Ill. App. 442; *State* v. *Bruce,* 334 Mo. 1107, 70 S. W. (2d) 854. But such should not be the holding in a jurisdiction where it appears from the statutes pertaining to the settlement of estates of decedents to be the policy of the law that all matters relating to the payment of debts, taxes and costs of administration, and distribution of net proceeds, shall be determined in the county wherein administration of the estate was initially granted by the probate authorities. Articles 1 to 5, inclusive, of Chapter 44 of the Code make specific provisions for ascertainment of assets, payment of taxes and costs, and proof and allowance of claims and debts against a decedent's estate. Less explicitness appears with reference to the ascertainment of the persons entitled to distribution of such estates, and of the payment of distributive shares of the estate; but there are, nevertheless, certain provisions which indicate clearly the policy of the law on the subject of determining in this state the right to participate in the distribution of the personal estate of a decedent. Note the following: At the time of the qualification of an executor or administrator he shall file in the probate court an affidavit of himself or some other credible person showing the names, and, as far as possible, the addresses of the heirs and distributees of the decedent, and their relationship to the decedent. Code, 44-1-13. Upon the qualification of a personal representative the estate shall be referred to a commissioner of accounts for proof of debts and claims and "determination of the amount of the respective shares of the legatees and distributees * * * ." Code, 44-2-1. The report of the commissioner of accounts "shall also show what persons are entitled to share in the estate as legatees, and as such in what property or amounts; or as distributees, and as such in what proportions." Code, 44-2-16. There is a further provision that if any fiduciary

fails to pay money as required by a court which may have approved the finding of a commissioner respecting such item, "any person interested may bring a suit in chancery in the circuit court of the county wherein such order was made, to compel compliance therewith * * * ." Code, 44-4-22.

From these statutory provisions it seems clear that it was the legislative intent that matters pertaining to the settlement of estates of decedents should be under the authority of the courts of the county wherein administration was granted. The reason for such policy of the law is obvious; namely, that settlement of estates may not be made in piece-meal through the authority of courts of different counties, but that all matters relating to the personalty of a decedent's estate be resolved in the courts of the county where the will was probated or, in the case of an intestate, where administration was granted. It is true that the provisions of Article 2 of Chapter 44 of the Code are not exclusive in the determination of the rights of claimants of distributive shares of an estate. *Hansbarger* v. *Spangler,* 117 W. Va. 373, 375, 185 S. E. 550. But that proposition in nowise discounts the requirement that if a claimant to a distributive share of an estate resorts to a suit in equity or an action at law to enforce his claim, he must do so in the county wherein the estate is in the course of settlement.

So we hold that when it came to the attention of the circuit court of Roane County, through the interpleader affidavits of the administrator, that the Harry T. Winters estate was in the process of settlement in Ohio County, such information operated as an effectual challenge of the Roane County circuit court's jurisdiction of the subject matter. The estate of the decedent having been taken under control by the courts of Ohio County, the courts of other counties of the state are without jurisdiction to deal with the subject matter of the estate.

For the purpose of the prosecution of suits against him an administrator must be considered a resident of the county where he was appointed. That is his official resi-

dence regardless of where his home may be located. This is the same principle which was applied in the case of *Charter* v. *Doddridge County Bank*, 119 W. Va. 735, 196 S. E. 158, wherein we held: "Code, 56-1-1, which authorizes suit to be brought in the county of the residence of any defendant, does not legalize an action on a nonpersonal claim against a bank receiver in the county of his personal residence which is not the county wherein the bank is located."

The foregoing considerations require that the judgment be reversed, the verdict set aside and the case dismissed.

*Reversed and dismissed.*