STATE OF WEST VIRGINIA

*v.*

FRED HUBER

(No. 9867)

*and*

STATE OF WEST VIRGINIA

*v.*

CHARLEY FALLETTY

(No. 9866)

Submitted September 4, 1946. Decided October 8, 1946.

*H. E. Dillon, Jr.,* and *Charles E. Mahan,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *T. C. Townsend* and *M. E. Boiarsky,* for State, defendant in error.

*T. C. Townsend* and *M. E. Boiarsky,* for United States Brewers Foundation, Inc., amicus curiae.

Fox, Judge:

These cases involve the action of the Circuit Court of Fayette County, upon separate hearings and the entry of separate orders therein, on April 26, 1946, by which licenses to sell nonintoxicating beer at the respective places of business owned by defendants in the City of Mount Hope, Fayette County, West Virginia, were revoked. The proceedings originated under the provisions of Sections 13, 14, 15, and 15-b of Article 16, Chapter 15, Acts of the Legislature, 1945, and the first step therein as against each of the defendants was the filing, in the office of the Clerk of the Circuit Court of Fayette County, of a complaint by one Albert Taylor in which certain violations of Section 13, Article 16, aforesaid, are alleged. This was followed by notice to each of the defendants, in the name of the Prosecuting Attorney of Fayette County, in which notice the time and place set for a hearing on the complaint in the Circuit Court of Fayette County, was stated. There was a demurrer to each of the complaints, and also a motion for a bill of particulars. The demurrer was overruled, but the motion for a bill of particulars was sustained, which was

furnished. This was followed by a hearing on each of the original complaints and bills of particulars, on which evidence was taken, at the end of which hearings separate orders were entered revoking the license of each of the defendants, to be effective thirty days from the date of such order. On June 20, 1946, we awarded a writ of error in each of said cases. The original complaints and bills of particulars in the two cases are substantially the same; the evidence, except in minor and unimportant particulars, is the same; the persons in respect of whom the defendants are alleged to have violated the law are the same; and the legal questions involved are identical. Therefore, on motion of counsel for the parties, and by leave of court, the two cases have been briefed and orally argued as one case, and in our discussion they will be so treated.

In the petition for writs of error in these cases the assignment of error was under four heads: (1) Failure to set forth in the complaints in detail the facts constituting alleged violations of law; (2) failure of the bill of particulars to set forth in detail the facts alleged to constitute violations of law; (3) the lack of substantial evidence to support the charges; and (4) that the action of the court in revoking the licenses of the defendants was contrary to the law and evidence and without appreciable evidence to sustain it. The constitutional question whether the trial court, under the provisions of Sections 15 and 15-b of Article 16, Chapter 15, Acts of the Legislature, 1945, had jurisdiction to hear the cases was not raised. At the time of the granting of the writs of error counsel were requested by the Court to discuss this question on the final hearing. It may not be amiss to state at this point that upon considering the applications for writs of error, this Court was impressed with the importance and far-reaching consequences of the enactment of the Legislature, which conferred upon circuit courts and other courts of record authority to entertain proceedings to revoke licenses to sell nonintoxicating beer, and was unwilling to permit the question of the

constitutionality of that enactment to pass unnoticed. In the briefs and in the oral arguments by counsel for the parties that question has been fully and ably presented.

In the brief of counsel for plaintiffs in error, the errors relied upon for reversal are: (1) The court erred in revoking the licenses of the defendants without basis of sufficient or appreciable evidence and clearly contrary to the preponderating testimony; and (2) the statute under which the licenses were revoked, in so far as it gave concurrent jurisdiction to circuit courts, is unconstitutional and void. Under points and authorities relied upon for reversal plaintiffs in error say: (1) That the complaint and bill of particulars did not set forth in detail the facts alleged to constitute violations of law upon which revocations were made; (2), (3), and (4) raise the question of the burden of proof and sufficiency of evidence; and under (5) it is contended that Chapter 15, Article 16, Acts of the Legislature, 1945, in so far as it purports to grant concurrent jurisdiction to courts of the State to hear complaints as to alleged violations of the nonintoxicating beer statute, and to revoke licenses permitting sale of beer, is unconstitutional, and to support this point three separate grounds are relied on: (a) Because it ignores the separation and division of· powers between the legislative, executive and judicial departments of the Government, and purports to delegate to the judiciary powers which are distinctively administrative and legislative; (b) because under Section 30, Article VI, Constitution of West Virginia, the title of the bill fails to embrace the object sought to be effected by the enactment; and (c) because in providing different · grounds and different procedures, without classification, and applicable to identically the same person, there was denied to defendants equal protection of the law guaranteed by the Federal Constitution.

It is obvious that the first question presented is the constitutionality of the Act of the Legislature under which the Circuit Court of Fayette County assumed juris-

diction in these cases, and entered the orders of revocation aforesaid; and the first point which we must determine is whether the title of the Act was sufficient, because even if the Legislature had the right to impose upon courts of record the power and duty to revoke licenses to sell nonintoxicating beer, it could do so only by an enactment effectuated by a legislative procedure in accord with the Constitution.

Section 30 of Article VI of our Constitution provides: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, * * *." Plaintiffs in error contend that the title of Chapter 15, Acts of the Legislature, 1945, is defective because it does not point out that it was intended to grant to courts of record the powers which are the subject of this controversy.

The determination of this question requires an outline of prior legislation affecting the sale of nonintoxicating beer. The Code of 1931 contains no reference to nonintoxicating beer. The first legislation on this subject was enacted March 11, 1933. Chapter 24, Acts of the Legislature, Regular Session, 1933. That Act was found defective as to its administrative features, and otherwise, and at the First Extraordinary Session of the Legislature, 1933, by Chapter 20 of the Acts of that session, there was enacted, on April 12, 1933, a comprehensive law, providing for the sale of nonintoxicating beer, regulating the sale thereof, and repealing the former Act. This latter Act assumes to amend Article 12, Chapter 11 of the Code, which is the license statute. By that Act, Section 1 of Article 12, Chapter 11 of the Code, was amended to include the following: "(z) Manufacture, sell or distribute, either at retail or wholesale, nonintoxicating beer as defined in section ninety-one of this act." Then followed Sections 91 to 102, both inclusive, added to Article 12 of Chapter 11 of the Code.

Next followed an Act of the Legislature, session of 1937. By Chapter 12 of the Acts of that session, a new and comprehensive law covering the sale of nonintoxicating beer was enacted. The title of that Act reads as follows: "AN ACT to amend chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by repealing sections ninety-one to one hundred three, inclusive, of article twelve, and by adding article fifteen, all relating to nonintoxicating beer." This Act repeals the entire 1933 Act, mentioned above, except Section 1, and adds Article 15 to Chapter 11 of the Code. This article should have been designated as Article 16, for Chapter 66, Acts Second Extraordinary Session, 1933, enacted the consumers' sales tax, and this Act was designated as Article 16 in Michie's Codes of 1937 and 1943 as Article 15, and in the same Codes the law relating to nonintoxicating beer is designated Article 16. This accounts for the title to the 1945 Act in which the nonintoxicating beer law is designated as Article 16 of Chapter 11 of the Code.

The next Act of the Legislature in relation to nonintoxicating beer was passed February 27, 1945, effective July 1, 1945, Chapter 15, Acts, 1945. The title to this Act, which is now under attack, reads as follows: "AN ACT to amend and reenact sections, two, three, four, five, twelve, thirteen, fourteen, fifteen, sixteen, eighteen, and nineteen, article fifteen, chapter eleven of the code of West Virginia one thousand nine hundred thirty-one, as enacted by chapter twelve, acts of the legislature, regular session, one thousand nine hundred thirty-seven, and to provide that said article fifteen and all subsequent acts amendatory thereto shall hereafter be designated as article sixteen of said chapter, and to further amend said article by adding thereto sections fifteen-a and fifteen-b, all relating to nonintoxicating beer." We are here concerned only with Sections 13, 14, 15, 15-a and 15-b of this Act.

Section 13 of said Chapter 15, provides that it shall be unlawful for a licensee, its servants, agents or em-

ployees to do, or permit to be done certain acts in connection with the sale of nonintoxicating beer. These are specified under heads designated by letters (a) to (q), constituting seventeen separate and distinct acts which are termed unlawful. Section 14 confers upon the beer commissioner power to prescribe rules and regulations governing the sale of nonintoxicating beer. Section 15 is the important section as relates to this case and provides that: "The commissioner may revoke, or suspend, the license of any licensee:

"(a) For any of the reasons and upon any grounds declared to be unlawful by section thirteen of this act; or

"(b) For any reason or ground upon which a license might have been refused in the first instance had the facts at the time of the issuance of such license been known to the commissioner; or

"(c) for the violation of any rule, regulation or order promulgated by the commissioner under authority of this article.

"In addition to the grounds for revocation or suspension of a license above set forth, conviction of the licensee of any offense constituting a violation of the laws of this state or of the United States relating to nonintoxicating beer or alcoholic liquor shall be mandatory grounds for the revocation or suspension of a license.

"Any court of record, except juvenile, domestic relations courts and courts with jurisdiction limited to the trial of criminal offenses, of the county in which the licensed premises are located, shall have concurrent jurisdiction with the commissioner of any proceedings for the revocation or suspension of the license of any retailer of the Class A or Class B for a violation by such retailer of the provisions of paragraphs (a), (b), (g), (j), (m), (p), or (q), of section thirteen of this act, or for making any false statement concerning any material fact in submitting an application for a retailer's license or for a renewal of such a license."

Section 15-b relates to the manner in which the hearing for revocation or suspension of a retail dealer's license

may be had in a court of rceord, such as is mentioned in Section 15.

When we examine the 1937 Act, which immediately precedes the Act of 1945, we find that Section 15 of that Act confers upon the Tax Commissioner the power to revoke licenses to sell nonintoxicating beer, prescribes the manner in which he may proceed to effect such revocation, and provides for a review of his decision by the Circuit Court of Kanawha County. Section 15 of the Act of 1945, confers the same power on the Beer Commissioner, who, by other provisions of the Act, is substituted to all the power theretofore exercised by the State Tax Commissioner, to revoke or suspend such licenses. It then adds the clause which gives to certain courts of record the right to revoke licenses on certain of the grounds set out in Section 13. Section 15-b is new, and relates solely to the regulation of proceedings in courts of record, where revocation of a license is sought. We are of opinion that the 1945 amendment of Section 15, of the Acts of 1937, is germane to and in line with the general purpose of the earlier Act. Many times the question of the sufficiency of the title to an Act of the Legislature has been raised in this Court, and we think it sufficient to quote what was held in the case of *Cole* v. *Pond Fork Oil & Gas Co.*, 127 W. Va. 762, 35 S. E. 2d 25. We there said: "It is well settled that a statute may be amended by reference to article and section, so long as what is done by the amendment is in line with and conformity to the general purpose of the act being amended. It is only in cases where a statute is amended by reference to article and section, and where something is injected into the legislation entirely out of line with the general purposes of the law being amended, and no reference made thereto in the title of the act, that the constitutionality provision with respect to titles to acts of the legislature comes into question." The 1945 amendment to Section 15, providing for nothing more than a new and additional method by which revocation of a license to sell nonintoxicating beer might be effected, we cannot say

that it was not in conformity with the general purposes of the statute sought to be amended. We are therefore of the opinion that the title of the Act is sufficient.

We next come to the constitutional question whether the Circuit Court of Fayette County, under the enactment aforesaid, had jurisdiction to hear the proceedings for the revocation of the licenses here involved. As stated above, the question was not raised in the petitions for writs of error. We are aware of the general rule that constitutional questions, particularly a question of the constitutionality of an act of the Legislature, will not be considered by this Court, unless raised by an interested party, and necessary to a decision in the case. *Shephard* v. *Wheeling*, 30 W. Va. 479, 4 S. E. 635; *State* v. *County Court*, 60 W. Va. 339, 55 S. E. 382; *Anderson* v. *Bowen*, 78 W. Va. 559, 89 S. E. 677; *Luella Ice* v. *County Court*, 91 W. Va. 272, 112 S. E. 495. But here the question is raised in this Court, and argued orally and in briefs of counsel for all parties, which is permissible under our practice, the only restriction being that errors assigned for the first time in this Court, in a reply brief of an appellant or plaintiff in error, will not be considered. The fact that these assignments of error were first made here in brief of plaintiffs in error in each case, at the suggestion of this Court, does not change the situation. In fact *Eclipse Oil Co.* v. *South Penn Oil Co.*, 47 W. Va. 84, 34 S. E. 923; *Buskirk* v. *Ragland*, 65 W. Va. 749, 65 S. E. 101; *Charlotton* v. *Gordon*, 120 W. Va. 615, 200 S. E. 740, and the two Virginia cases of *Thacker* v. *Hubbard*, 122 Va. 379, 94 S. E. 929; and *Commonwealth* v. *Lorillard Co.*, 129 Va. 74, 105 S. E. 683, sustain the position that this Court *ex mero motu* may take cognizance of lack of jurisdiction at any point in the case where that fact is developed. The constitutional question raised goes to the jurisdiction of the circuit court to entertain the proceedings in which the orders complained of were entered. Here, we think, the records presented clearly developed the fact that such a question existed in the cases, and, considering the importance thereof, in-

volving as it did the very structure of our system of Government, this Court was not disposed to establish a seeming precedent which might be cited in cases where the question had been directly raised in a trial court. This explains why the question is before us in these cases.

The question having been properly raised, whether the Circuit Court of Fayette County correctly assumed jurisdiction in these cases, must be first determined; for, if the court was without jurisdiction in the cases, any orders entered therein were absolutely void. The question presented involves a consideration of what constitutes legislative power, executive power, and judicial power. We are not particularly concerned here with a definition of legislative and executive power, except to distinguish them from judicial power. The question here presented is whether courts of record in this State, which possess only judicial power, may be charged with the duty of exercising legislative or executive power. Briefly stated, legislative power is the power of the law-making bodies to frame and enact laws. This power covers a very wide scope. Indeed, except where it is limited by the provisions of the State and Federal Constitutions, that power is practically and essentially unlimited. In the Legislature rests the power to apply the police power of the State, and every other power which confers governmental authority not directly, or by necessary constitutional implication, vested in the executive or judicial departments of the State. Unquestionably, the power of regulation of public utilities, the licensing of businesses of all kinds, the regulation of such businesses, the general control thereof, including the power of revoking licenses or permits issued in connection therewith, is a legislative power. This power is subject to control by the courts only where, in the exercise thereof, there has been a violation of some State or Federal constitutional provision, limiting the Legislature in its right to perform certain acts in connection with the power it assumes to exercise. The executive power is more limited: it merely extends to the detail of carrying

into effect the laws enacted by the Legislature, as they may be interpreted by the courts. Except where limited by the Constitution itself, the Legislature may stipulate what action the executive officers shall or shall not perform.

When we come to a definition of judicial power, we find more difficulty. In fact, it seems impossible to define it. Neither the Federal Constitution, nor the Constitution of West Virginia, attempts to define judicial power. One text writer says: "Ordinarily judicial power is the power conferred upon courts to duly administer the law." It is defined by Bouvier as "* * * the authority vested in the judges; * * * The authority exercised by that department of government which is charged with the declaration of what the law is and its construction so far as it is written law; the power to construe and expound the law as distinguished from the legislative and executive functions." 2 Watson on the Constitution, 1084. Attempted definitions appear in Black's Law Dictionary (3rd ed.) 1033, and in 1 Cooley's Constitutional Limitations, 8th ed. 173, under the heading "Powers which the legislative department may exercise"; and in 23 Words and Phrases, 304. Reference to these authorities, and many others which might be cited, still leaves unsettled the question of exactly what judicial power is. Someone has ventured the suggestion that the lack of definition may be attributable to the fact that it is assumed that everyone knows what judicial power is. Without attempting to define it, we think this much may be said: It is the power which a regularly constituted court exercises in matters which are brought before it, in the manner prescribed by statute, or established rules of practice of courts, and which matters do not come within the powers granted to the executive, or vested in the legislative department of the Government. The Legislature may impose duties, judicial in character, upon the courts, but having once imposed these powers it has no right to control the exercise thereof; and that, we think, constitutes judicial power.

The separation of these powers; the independence of one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained. No theory of government has been more loudly acclaimed. The great statesmen and students of Government, who framed and submitted to the states our original Federal Constitution, seem to have considered the application of this theory an experiment, although the idea was not new. Locke, Montesquieu, Blackstone and others suggested the idea and, prior to the Revolution, argued for its adoption as a principle of government. In the adoption of our Federal Constitution, it was first put in practical form, and considered what may be termed the cornerstone of our system. We have not read a better discussion of the importance ascribed to this principle than that contained in 3 Willoughby on the Constitution, 1616, where under the headnote "Separation of Powers", the author makes this statement:

"A fundamental principle of American constitutional jurisprudence, accepted alike in the public law of the Federal Government and of the States, is that, so far as the requirements of efficient administration will permit, the exercise of the executive, legislative, and judicial powers are to be vested in separate and independent organs of government. The value of this principle or practice in protecting the governed from arbitrary and oppressive acts on the part of those in political authority, has never been questioned since the time of autocratic royal rule in England. That the doctrine should govern the new constitutional system established in 1789 was not doubted. Washington, in his farewell address, said: 'The spirit of encroachment tends to consolidate the powers of all governments in one, and thus to create, whatever the form of government, a real despotism.' Madison, in The Federalist, wrote: 'The accumulation of all powers, legislative, executive, and judicial, in the same hands whether of one, a few, or many, whether hereditary,

self-appointed, or elective, may justly be pronounced the very definition of tyranny.' John Adams wrote: 'It is by balancing one of these three powers against the other two that the efforts in human nature toward tyranny can alone be checked and restrained and any degree of freedom preserved;' and Hamilton asserted 'I agree that there is no liberty if the powers of judging be not separated from the legislative and executive powers.' Webster stated the same doctrine when he said: 'The separation of the departments [of government] so far as practicable, and the preservation of clear lines between them is the fundamental idea in the creation of all of our constitutions, and doubtless the continuance of regulated liberty depends on maintaining these boundaries.' "

The authors of the Constitution of this State did not lose sight of this principle of government. In framing our Constitution for submission to the people of the State, they inserted therein, as Article V, the language following: "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

It will be noted that this Article of the Constitution provides against what may be termed two distinct dangers: First, the exercise by one department of any power vested by the Constitution in either of the other two, and, second, that one person might seek to exercise powers of more than one of them at the same time. This means that no judge of any court can act as a member of the Legislature, or fill an executive office; nor can a member of the Legislature, or any official of the executive department, fill a judicial office. The language used in the Constitution is plain, simple, and, to our minds, understandable, and its meaning clear. We do not subscribe to the theory, advanced in some quarters that: "The notion that because the words of the statute [Constitution] are plain, its meaning is also plain, is merely

pernicious oversimplification." We believe, and we think our decisions support us, that the language of our Constitution, and the statutes enacted thereunder, should be interpreted according to its common and accepted meaning. We do not believe there can be any question raised as to the plain meaning and intent of Article V of our State Constitution.

The regulation of the manufacture, distribution and sale of nonintoxicating beer is clearly within the power of the Legislature, under the police power of the State. *Himebaugh* v. *James*, 119 W. Va. 162, 192 S. E. 177. Connected with the power to regulate, and as a necessary adjunct thereto, is the power to revoke licenses, which may be used in connection therewith. Without this power there could be no effective regulation. This being true, what place has the judicial department in that regulation, save and except to see that it is exercised in conformity with the general laws guaranteeing the citizens due process of law in matters affecting their rights, whether they be personal, or connected with their property? If the regulation of the sale of nonintoxicating beer is a legislative function, Article V of our Constitution expressly prohibits the exercise of that power by the courts.

At this point it seems proper to consider powers intended to be conferred by our Constitution upon the courts. We have heretofore discussed the meaning of the term "judicial power". We must bear in mind that Article VI of the Constitution provides that the legislative power shall be vested in the Senate and the House of Delegates. That means that *all* legislative power is vested in the Legislature. Article VII of our Constitution only provides that the executive department shall consist of certain named officers, but it does provide that the chief executive power shall be vested in the governor, who shall take care that the laws be faithfully executed. Section 1 of Article VIII of our Constitution provides: "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges

thereof, in such inferior tribunals as are herein authorized and in justices of the peace." Section 3 of Article VIII limits and defines the scope of the jurisdiction of the Supreme Court of Appeals. That section reads:

"It shall have original jurisdiction in cases of *habeas corpus, mandamus,* and prohibition. It shall have appellate jurisdiction in civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars; in controversies concerning the title or boundaries of land, the probate of wills, the appointment and qualification of a personal representative, guardian, committee or curator; or concerning a mill, road, way, ferry or landing; or the right of a corporation or county to levy tolls or taxes; and, also in cases of *quo warranto, habeas corpus, mandamus, certiorari,* and prohibition, and in cases involving freedom or the constitutionality of a law. It shall have appellate jurisdiction in criminal cases where there has been a conviction for felony or misdemeanor in a circuit court, and where a conviction has been had in any inferior court and been affirmed in a circuit court, and in cases relating to the public revenue, the right of appeal shall belong to the State as well as the defendant, and such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law."

Section 12 of the same Article defines the jurisdiction of circuit courts in the following language:

"The circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by *mandamus,* prohibition and *certiorari.* They shall, except in cases confined exclusively by this Constitution to some other tribunal, have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds fifty dollars; of all cases of *habeas corpus, mandamus, quo warranto,* and prohibition; and of all cases in equity, and of all crimes and misdemeanors. They shall have appellate jurisdiction in all cases, civil and criminale, where an appeal, writ of error or *supersedeas* may be allowed to the judgment or proceedings of any inferior tribunal. They shall also have such other jurisdiction,

whether supervisory, original, appellate or concurrent, as is or may be prescribed by law."

It will be noted that as to circuit courts, it is provided that: "* * * They shall also have such other jurisdiction, whether supervisory, original, appellate, or concurrent, as is or may be prescribed by law." It has been contended that this language was intended to give to the Legislature unlimited power to extend the jurisdiction of circuit courts beyond the limits prescribed by the remainder of Section 12 quoted above, and the expression "prescribed by law" means that the Legislature may prescribe law in regular course. However, under our decisions we cannot give to this language such a construction. In *Hodges* v. *Public Service Commission*, 110 W. Va. 649, 159 S. E. 834, it was held: "The Legislature cannot commit to the judiciary powers which are primarily legislative." And in the body of the opinion it is said:

"We are aware that section 12 of article VIII confers on circuit courts 'such other jurisdiction, whether supervisory, original, appellate or concurrent, as is or may be prescribed by law'; and that by reason of this clause, this court has upheld enactments. imposing on circuit courts jurisdiction in such legislative matters as the valuation of property for taxation (on appeal) and the incorporation of towns. See *Mackin* v. *County Court*, 38 W. Va. 338, and *In re Union Mines*, 39 W. Va. 179, 182, in which the court said: 'In discharging these functions the circuit court * * acts as a part of the legislative branch of the government under the express authority of the constitution.' The phrase 'other jurisdiction' in section 12 is general. The inhibition in article V against the exercise of dual authority is specific. Recognizing the force of that inhibition, this court said that it 'necessarily follows' if an act 'in any degree requires the circuit court to exercise legislative powers, it is to that extent void.' *Shepherd* v. *Wheeling*, 30 W. Va. 479, 481. So, instead of special authority for, the constitution affords *express* authority against the circuit court becoming a legislative branch. *In re Union Mines* overlooks both the positive inhibition in article V and the en-

tire constitutional design to separate the powers of government, as set forth in articles V, VI, VII and VIII. Prior to the words 'other jurisdiction', section 12 mentions certain proceedings and cases in which circuit courts shall have jurisdiction. No intimation is given there or elsewhere that circuit courts may assume the duties of another department, either as subordinates or as supervisors. We cannot agree that after delimiting the three departments of the government so precisely, the framers then meant by the words 'other jurisdiction' to confer on circuit courts departmental authority in or over the other two departments. We adopt the natural inference that the 'other jurisdiction' is jurisdiction essentially juridical (then or thereafter prescribed by law) over proceedings not named in the section."

This holding has been followed in *Staud* v. *Sill*, 114 W. Va. 208, 171 S. E. 428; *Sims* v. *Fisher*, 125 W. Va. 512, 25 S. E. 2d 216. In the last case cited we indicated that this rule was the settled law of the State, and would not be departed from. We still think it is settled law in this State that the Legislature cannot impose upon any court a duty which requires the performance of an act not judicial in character. On this point see 47 W. Va. Law Quarterly 282-318. By reason of the importance, the effect and the wide-spread application of these decisions, they have been given wide circulation, even notoriety, throughout the State, and that the Legislature of 1945 was acquainted with such rulings is attested by the fact that Chapter 140 of the Acts of 1945, relating to the sale of forfeited and delinquent lands was enacted in an effort to conform to the ruling in the *Sims* case.

We are mildly criticized for expressing the view that a strict rule should be applied in the application of Article V of our Constitution, and our attention is called to cases in which this Court has stated that abstract, analytical lines of separation of powers have not and cannot be drawn. This is freely conceded. There is, necessarily, some mingling and overlapping of powers between the three separate departments of our State Government. These are incidental, and probably cannot be avoided.

But if we sustain the present law, conferring jurisdiction on courts of record to entertain proceedings to revoke licenses to sell nonintoxicating beer, it will, in principle, amount to total destruction of the theory of separation of power, intended to be forever secured by Article V of our Constitution. We deem it our duty to attempt to enforce the true meaning, intent and purpose of Article V, rather than to encourage departure therefrom. We are unwilling to assume responsibility for such departure, and of that attitude we have heretofore, and do now, give notice. We consider the matter of such importance that if it is believed that a departure from the strict rule we have applied in interpreting this Article is desirable, that departure should be brought about through a resort to the people rather than this Court. The Constitution contains a provision for its amendment, to which resort may be had.

The proposition is advanced that because the hearing provided for by Section 15-b of Article 16, Acts of the Legislature, 1945, provides for a proceeding which bears close resemblance to those used in the trial of ordinary actions at law or suits in equity, there is, in fact, an exercise of judicial power; and from this it is argued that in passing on these cases judicial power was exercised by the circuit court. If this be true, the so-called concurrent power, an expression difficult to understand as being applicable to the situation here presented, vested in the beer commissioner, is judicial power, and we think no one would contend that an administrative officer can exercise that power. Only courts of record and justices of the peace can do so. This theory is attempted to be supported by the case of *Arkle* v. *Board of Commissioners*, 41 W. Va. 471, 23 S E. 804. In that case an effort was made to remove a justice of the peace in Ohio County. The statute, as it then was, authorized a proceeding for the removal of a justice of the peace before the body constituting the county court of that county. A petition was filed, evidence was taken, and, generally speaking, a regular legal proceeding was conducted, or

was being conducted, before the county court. The defendant in that proceeding sought a writ of prohibition, prohibiting the county court from continuing to exercise jurisdiction in the matter, and the writ was awarded on the ground that the proceeding to remove a county-district officer, involving as it did, the taking of testimony and the application of legal principles, decision of matters of law and fact affecting the right to hold the office, was a judicial question; and inasmuch as county courts, under the Constitution, were only vested with such judicial power as to enable them to deal with probate matters and the settling of estates (Section 24, Article VIII, Constitution), it did not possess the power to remove county-district officers. The result was that thereafter the removal of county and district officers could only be effected in a proceeding in the circuit court. Code, 6-6-7. In that case it was held in the body of the opinion that: "When a judge or a court of justice in a suit between parties, ascertains facts, ascertains and applies thereto the law, decides the controversy, and renders judgment, he has exercised judicial power, and in such exercise has done a judicial act." And there is other language in the opinion which supports the theory that, where such matters are dealt with by a judge or a court, the functions of a court have been exercised and a judicial act has been performed. This Court, while approving the result in the *Arkle* case on the facts there present, finds itself unable to agree that the mere taking of testimony, the ascertainment of facts, and the law necessary to the decision of a controversy, renders that decision the exercise of judicial power, in cases where, under the Constitution, the subject of the inquiry is one which is within the jurisdiction either of the legislative or executive department of the State Government. If we should follow the argument made on the basis of the *Arkle* case, and adopt as law the contention that the action of the Circuit Court of Fayette County was the exercise of a judicial function, and the exercise of judicial power, then it necessarily follows that the Legislature does not have a right to exercise that power either di-

rectly or through any agency it may attempt to set up. We know, as a matter of every day observation, that the agencies of the legislative department of our Government, such as the public service commission, the road commission, the compensation commissioner, the unemployment compensation commissioner, and many other boards and regulatory bodies affecting the professions and particular occupations, have constantly submitted to them matters upon which they take evidence, attempt to apply the law, make decisions, sometimes of vast importance, and of importance equal to matters determined by this Court. If these acts are judicial acts, and constitute the exercise of judicial power, then these legislative agencies have no right to exercise such power, for, being judicial in nature, as contended, their exercise belongs exclusively to the courts. The extension of the argument to its logical conclusion destroys it. No one will contend that we should reform our system of Government, and destroy every administrative agency in the State, which, in the course of its duties, may be called upon to hear evidence, and make decisions, based upon law and fact. This would require the setting up of numerous courts to pass upon purely administrative matters, which have never been considered as within the jurisdiction of the courts, never were intended to be, and the recognition of which would involve the exercise of a power which, from a practical standpoint, a court could not administer with efficiency or, perhaps, with justice. In *Board of Dental Examiners* v. *Hedrick*, 116 W. Va. 222, 179 S. E. 809, this Court held that the West Virginia Board of Dental Examiners, constituted by Code, 30-4-4, was not a judicial tribunal, and that a hearing before it, under Code, 30-1-8, was not a law suit, and not subject to technical rules of procedure. That rule applies to every board created in this State for the regulation of professions. The principle of the rule thus announced applies to every regulatory function within the jurisdiction of the various legislative agencies which have been set up in this State to control our highways, public utilities of all kinds, and the other boards and

agencies referred to above. No case is ever considered by a court that does not involve the exercise of judicial power. When a controversy is presented to a court, it is always heard and determined in accordance with statutory or accepted rules, and upon evidence and the application of rules of law applicable thereto. The mere fact that a court follows judicial rules in determining a controversy, does not support its right to hear a particular controversy, if that controversy involves an administrative regulation which belongs to the legislative department of the Government, and has been delegated by the Legislature to a chosen agency for its administration.

The views we have expressed preclude a resort to the courts, in respect to matters growing out of the exercise of administrative law, under powers delegated by the Legislature. The courts are open to a hearing on any complaint, where powers are exceeded, or for any other reason involving legal rights, the solution of which involves the exercise of judicial power. Then, there are statutory provisions, and rules of law, respecting appeals and writs of error. Under common law, where no provision was made for an appeal or writ of error, a writ of certiorari could be resorted to, and this right is, in some instances, used to this date — sometimes without statutory authority, and in other instances in pursuance thereof. For example, our present statute in relation to unemployment compensation provides for review by the Kanawha County circuit court and to this Court by writs of certiorari. Chapter 1, Article 7, Section 21, Acts of the Second Extraordinary Session, 1936. *Miners v. Hix*, 123 W. Va. 637, 17 S. E. 2d 810. In some instances such appeals come to this Court, and to the circuit courts, under statutory provisions, and on the theory that administrative agencies, when required to decide questions of law and fact, act in a *quasi* judicial capacity, which furnishes a basis for an application for review by the courts.

This was not always true. One of the first cases bearing on this question was that of *United Fuel Gas Co.* v. *Public Service Commission,* 73 W. Va. 571, 80 S. E. 931. The Legislature by Chapter 9, Acts of 1913, created the Public Service Commission, and by Section 16 thereof provided that: "Any party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present his or its petition in writing to the supreme court of appeals, or to a judge thereof in vacation, within thirty days after the entry of such order, praying for the suspension of such final order."; and then goes on to provide that the matter may be heard by the Supreme Court of Appeals, and that it may decide the matter in controversy as to it seems just and right. This section of the statute was contested, and this Court held that it could not take jurisdiction by appeal under Section 16, but that upon original process to review, it could entertain and pass upon the matter presented, and said "* * * it seems to us that the character of the proceedings thus prescribed comport rather with proceedings as upon original process by prohibition or mandamus than upon appellate process." In discussing the case the Court uses this language: "Apart from this Public Service Commission Act, we think it must be conceded, as several times decided, that the appellate jurisdiction of this court is limited by the Constitution and statutes to judicial matters, in judicial proceedings, and that we have no power to review by writ of error or appeal the decisions of an inferior tribunal, officer or board, as to matters which are merely administrative, executive or legislative, and not strictly judicial in nature, except when such power may be expressly conferred by the Constitution.", citing many cases to support this statement. In contrast to this holding, there has grown up a proceeding, authorized by statute, and recognized by this Court which, by the employment of what may be termed a legal fiction, administrative boards, commissions and officials are treated as possessing *quasi* judicial power. In *Brazie* v. *Fayette County Commissioners,* 25 W. Va. 213, in an opinion written by Judge Snyder, this Court

held that: "The writ of prohibition lies from a superior court not only to inferior *judicial* tribunals, but to inferior *ministerial* tribunals possessing incidently judicial powers and known as *quasi* judicial tribunals, and also in extreme cases to purely ministerial bodies, when they usurp and attempt to exercise judicial functions." More recently, on the theory of the exercise of *quasi* judicial power by administrative agencies, the practice of permitting appeals or writs of error from the findings of administrative officials, boards and commissions is clearly recognized by our decisions. *Spurdone v. Shaw, Judge,* 114 W. Va. 191, 171 S. E. 411; *Board of Education v. Martin,* 112 W. Va. 174, 163 S. E. 850; *Quesenberry v. State Road Commission,* 103 W. Va. 714, 138 S. E. 362; *Reynolds Taxi Co.* v. *Hudson, Judge,* 103 W. Va. 173, 136 S. E. 833; *Ellis v. State Road Commission,* 100 W. Va. 531, 131 S. E. 7. All of these cases recognize the distinction between "judicial power" and "*quasi* judicial power". Whether there is a justification for the use of the latter term, and whether in lieu of permitting appeals and writs of error to the courts on that theory, we should resort to the old system under which, generally speaking, direct proceedings in court were required to set aside, or question, the actions of administrative boards and commissions, need not be decided. Apparently the law is settled in favor of the use of the appeal method, on the theory that duly constituted administrative boards and commissions do sometimes exercise *quasi* judicial power, and that, on that theory, there can be brought into play what is called judicial power. If there is an abuse of power; or if the power conferred by the Legislature be exceeded; or there is arbitrary or fraudulent exercise thereof; or any provision of the Constitution or the statute laws of the State is violated, a judicial question arises upon which the courts may pass judgment. But unless these administrative agencies are at fault in the respects noted above, their power to perform their functions, delegated to them by the Legislature, cannot be controlled by the courts; and, this being true, courts will

not assume to exercise administrative power, even though the Legislature may mistakenly authorize them to do so.

Article III of our State Constitution is designated as our "Bill of Rights". Section 20 thereof reads: "Free government and the blessings of liberty can be preserved to any people only by a firm adherence to justice, moderation, temperance, frugality and virtue, and by a frequent recurrence to fundamental principles." In our opinion, this case requires a recurrence to fundamental principles, one of which, as we have endeavored to point out, is the importance of maintaining a separation of powers between the legislative, executive and judicial departments of our State Government. It is sometimes believed permissible to minimize what are termed slight departures from correct principles, where some laudable purpose is sought to be effected. The Legislature, and the private interests which have sought to authorize and maintain the authority contended for by counsel for the State in these cases, are to be commended for their efforts to impose a strict regulation of a business, out of which many abuses may and do arise; and their recognition of the public interest, and their efforts to correct conditions by what they have conceived to be proper laws, the burdens of the enforcement of which they seem anxious to impose upon the courts, is likewise commendable, and, as Judge Hatcher said in the *Hodges* case: "* * is a flattering display of confidence in our department." But considerations of high public policy, and the plain terms of our Constitution, impel us to the conclusion that the licensing and regulation of the sale and distribution of nonintoxicating beer is the exclusive function of the legislative department of our Government, under the police power of the State; is not a judicial function; and cannot be made the subject of the exercise of judicial power, save only in cases where, in the exercise by the Legislature of its power in the premises, there is a violation of the Constitution, or the laws of the State, or some arbitrary or fraudulent exercise of that power, or

where its exercise is without excuse or without evidence, which in itself would be an arbitrary exercise of power. Then, and then only may judicial power be invoked. This power, as we have said, may be invoked by direct appeal to the courts, or where the administrative power is improperly used, through the processes of the courts by way of appeal, writ of error or certiorari, as indicated above. We hold, therefore, that Sections 15 and 15-b of Article 16 of Chapter 15, Acts of the Legislature, 1945, so far as they confer concurrent jurisdiction on courts of record in this State, to revoke or suspend licenses to sell or distribute nonintoxicating beer, or to entertain proceedings therefor, are unconstitutional and void, and the Circuit Court of Fayette County had no jurisdiction to entertain the complaints filed in these cases.

Our decision is intended to apply only to the two sections mentioned above. These provisions are, in our opinion, separable from other provisions of the Act and do not affect the same. Section 19 of said Chapter 15 provides that the Act shall be construed to be severable, and that if any of its provisions should be held unconstitutional or otherwise invalid, such invalidity should not affect the operation of the remaining portions of the Act.

Our conclusion makes it unnecessary to pass upon the question raised, involving the alleged denial of the equal protection of the laws, guaranteed by the Federal Constitution. Our decision will have the effect of confining to the beer commissioner the exclusive right to revoke or suspend licenses to sell or distribute nonintoxicating beer, subject to an appeal to the Circuit Court of Kanawha County, and from that court to this Court. Therefore, there can be no question as to any inequality as between parties, as to remedy and procedure. With the court provisions eliminated from the Act, every one is subject to the same procedure. Nor is it necessary to appraise the facts developed by the evidence. The circuit court having no jurisdiction or power to hear the

cases, those facts, as to these proceedings, become un-important.

We reverse the judgments of the Circuit Court of Fayette County in the two cases here presented, and will enter an order in this Court dismissing the same.

*Judgments reversed; proceedings dismissed; order entered here.*