MERRIMAN S. SMITH, Judge.
The facts including the amounts of overpayments which form the basis of this claim are not disputed. They have been stipulated, and are as follows:
“It is stipulated by and between the claimant, Continental Foundry and Machine Company, and the State Tax Commissioner of the State of West Virginia and the office of the Attorney General of the State of West Virginia as follows:
“The statement of claim of the Claimant contained in the notice of claim filed herein insofar as said statement of claim asserts and alleges facts is accurate and *31 correct in all respects. The Claimant did on January 5, 1944, file its business and occupation tax returns to the State of West Virginia for the fiscal year 1943, reporting' and paying as tax the amount of $54,801.47; that subsequent thereto and on the 27th day of April, 1945, the gross value of the manufactured products of the Claimant was redetermined in renegotiations proceedings with the Price Adjustment Boards of the Federal Government, such renegotiation proceedings resulting in a refund by the Claimant to the Federal Government in the amount of $9,300,000; that allocating the proportion of said renegotiation refund which is properly applicable to the products manufactured in the State of West Virginia to the State of West Virginia resulted in a reduction in the gross value of the manufactured products of the Claimant in West Virginia for that year in the amount of $2,917,000; and applying the applicable rates of the business and occupation taxes of the State of West Virginia to that reduced value shows that the Claimant overpaid its business and occupation taxes to the State ot West Virginia in that year in the amount of $10,925.21.
“Similarly, for the tax year 1945, the Claimant filed its final return for business and occupation taxes on December 20, 1945, reporting the gross value of its manufactured products subject to the business and occupation taxes at $11,898,590.61, and did report and paid taxes thereon in the amount of $41,213.72; subsequent thereto and on the 18th day of March, 1948 as the result of renegotiation proceedings a renegotiation agreement was arrived at by the terms of which the Claimant was obliged to refund to the Federal Government the amount of $3,272,027; allocating the proportion of the said negotiation refund to West Virginia which is properly chargeable as to the value of the manufactured products in West Virginia resulted in a reduction of the gross value of the manufactured products as reported in the Claimant’s 1945 return in the amount of $1,114,419.68, and this reduction, after applying to the reduced value the proper rates of tax, showed an indicated overpayment by the Claimant to the State of West Virginia for business and occupation tax in the year 1945 in the amount of $3,911.59.
*32 “The notice of claim also contains certain allegations with reference to the business and occupation tax for the year 1944, but the claim arising from the overpayment of tax in that year was determined and allowed in administrative procedure by the State Tax Commissioner and is not part of the Claiman’t claim here.
“It is further stipulated that the method of allocation of the renegotiation refunds made by the Claimant to the West Virginia business and to the gross value of the products manufactured in West Virginia is proper and that the computations shown upon Exhibit A and Exhibit B respectively and the notice of claim are accurate.”
While the claimant’s request for refunds for tax overpayment for both years 1943 and 1945 is based on different equitable and legal grounds, the majority of this court has consistently held that such overpayments constitute a moral obligation upon the state of West Virginia to make a refund, and awards have been made and so recommended to the Legislature for payment. However, the petition for refund of the 1945 tax overpayment is the first claim we have had presented wherein the renegotiation contract was not completed until after the two-year administrative remedy set forth in code ll-l-2a had expired, and this court recognizes that it was impossible for the claimant to put itself within the two-year limitation because the amount of the tax could not be determined within the two-year administrative period. This is all the more reason why the court of claims five-year statutory limitation should apply to such meritorious claims under the business and occupation tax.
The state has not suffered and detriment by reason of the failure of this claimant to present its claim for administrative action to the tax commissioner within the two-year period. It has had the use of the money and from the standpoint of the taxpayer merely held the money in escrow until such time as a definite determination of the proper and exact tax could be calculated.
*33 The court of claims was set up by the Legislature in its wisdom and understanding to have jurisdiction over such situations whereby the state of West Virginia is morally obligated to, and under all rules of equity and good conscience should, fulfill its obligation to its citizens. The state is not a master over the people but should be the servant of the people and the old conception that the state can do no wrong is a false theory if it be permitted to take advantage of an administrative technicality as in the instant claim, by taking the monetary substance of the claimant to which it is not justly and fairly entitled. The Supreme Court of our state in Cashman v. Sims, 43 S. E. (2d) 805, defined what constitutes a moral obligation, cited in the majority opinion, as:
“* * * or an obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons.”
There can be no doubt but that an action would be legal between private individuals should similar conditions arise between them.
As to the tax commissioner’s plea to the jurisdiction of the court of claims in the instant claim, he bases his plea upon Michie’s code chapter 11, article 13, section 8, which reads as follows:
‘‘If any person, having made the return and paid the tax as provided by this article, feels aggrieved by the assessment so made upon him for any year by the tax commisisoner, he may apply to the board of public works by petition, in writing, within thirty days after notice is mailed to him by the tax commissioner, for a hearing and a correction of the amount of the tax so assessed upon him by the tax commissioner, in which petition shall be set forth the reasons why such hearings should be granted and the amount such tax should be reduced. The board shall promptly consider such petition, and may grant such hearing or deny the same. If denied, the petioner shall be forthwith notified thereof; if granted, the board shall *34 notify the petitioner of the time and place fixed for such hearing. After such hearing, the board may make such order in the matter as may appear to it just and lawful, and shall furnish a copy of such order to the petitioner. Any person improperly charged with any tax and required to pay the same may recover the amount paid, together with interest, in any proper action or suit against the tax commissioner, and the circuit court of the county in which the taxpayer resides or is located shall have original jurisdiction of any action to recover any tax improperly collected. It shall not be necessary for the taxpayer to protest against the payment of the tax or to make any demand to have the same refunded in order to maintain such suit. In any suit to recover taxes paid or to collect taxes, the court shall adjudge costs to such extent and in such manner as may be deemed equitable. Upon presentation of a certified copy of a judgment so obtained, the auditor shall issue his warrant upon any funds in the treasury available for the payment thereof.
“No injunction shall be awarded by any court or judge to restrain the collection of the taxes imposed by this article, or any part of them, due from any person, except upon the ground that the assessment thereof was in violation of the constitution of the United States, or of this State; or that the same were fraudulently assessed; or that there was a mistake made in the amount of taxes assessed upon such person. In the latter case, no such injunction shall be awarded, unless application shall first have been made to the board of public works to correct the alleged mistake and the board shall have refused to do so, which fact shall be stated in the bill, and unless the complainant shall have paid into the treasury of the state all taxes appearing by the bill of complaint to be owing.”
The majority of this court is of the opinion that the remedy offered the claimant under this section of the code only runs concurrently with the administrative remedy applicable to the state tax commissioner in which event the two-year administrative limitation remedy would apply equally to the circuit court which likewise would bar the instant claim, *35 since the proceeding by claimant would be by way of prior administrative action, and in this case no administrative action was involved in the determination of the taxes paid. The tax was self-assessed by the claimant in filing its returns and voluntarily paid by the claimaint at the same time calling attention to and serving notice upon the tax commissioner that the contracts were to be renegotiated and that a proper refund should be made after such determination. Our Supreme Court has denied the power of the Legislature to delegate such administrative functions to a court, State v. Huber, 40 S. E. (2d) 11, in which the Legislature attempted to give the circuit courts concurrent power with the state tax commissioner over the question of licensing and revoking licenses for the sale of beer.
The court of claims is not a court of law and does not have the authority to pass upon the constitutionality of any statute. However, it is a fact-finding arm of the Legislature and within a five-year limitation period from which the cause of action arose it has the duty of investigating and making awards and recommending same to the Legislature in respect to all agencies of the state except in those instances where prima facie jurisdiction is specifically excluded.
We are thoroughly cognizant of the fact that under section 35, article 6 of the constitution of the state, that the state of West Virginia cannot be sued. However, the Legislature in its creation of the court, of claims refers to this section of the constitution, and it is the opinion of the majority of the court, as now constituted, that it should entertain and hear all claims against the state prosecuted before it within the statutory period, and if jurisdiction be not specifically barred that a proper determination and recommendation should be made, after weighing the evidence and all the facts, and with every consideration of the statutes and due respect to the decisions of the Supreme Court.
A majority of this court hereby makes an award in the sum of $10,925.21 for the year 1943 and $3,911.59 for the year 1945, *36 thereby making a total award of fourteen thousand eight hundred thirty-six dollars and eighty cents ($14,836.80) to the Continental Foundry and Machine Company, and recommends that same be authorized by the Legislature.